# Exhibit A

**From:** Cheryl Hardy
**Sent:** Wednesday, October 8, 2025 1:56 PM
**To:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Subject:** RE: I Need To Speak With You As Soon As Possible

Dear Claire,

I feel very uncomfortable with the way this is all being handled. This should have been handled totally differently.

I will attend the meeting, but I have nothing to contribute. I have giant cell arteritis totally stressed induced and I must protect my mental health and wellbeing.

Best,

Cheryl


Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104



**From:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Sent:** Wednesday, October 8, 2025 11:58 AM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Subject:** RE: I Need To Speak With You As Soon As Possible


Cheryl,


We really need you to meet with us. Your attendance is critical!  Angela is coming in the office in person and we can meet in her office at 2:00.


Hope to see you then.


Claire


**From:** Cheryl Hardy <chardy1@law.upenn.edu>
**Sent:** Wednesday, October 8, 2025 11:23 AM
**To:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Subject:** RE: I Need To Speak With You As Soon As Possible

At this point, Claire. I really have nothing to say.  This is clearly now out of my hands.  Again, proceed as you see fit.


Best,

Cheryl


Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104




**From:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Sent:** Wednesday, October 8, 2025 11:21 AM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Subject:** RE: I Need To Speak With You As Soon As Possible


I think so, yes.


**From:** Cheryl Hardy <chardy1@law.upenn.edu>
**Sent:** Wednesday, October 8, 2025 11:17 AM
**To:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Subject:** RE: I Need To Speak With You As Soon As Possible


Claire –


Is it necessary that I attend the 2pm meeting?  You all can proceed as you see fit.


Best,

Cheryl

Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104



**From:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Sent:** Wednesday, October 8, 2025 11:14 AM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Subject:** RE: I Need To Speak With You As Soon As Possible

Thanks, Cheryl – I'm just out of my 10:15 meeting and heading into another...I see we are all on the calendar to meet at 2:00.

I think you are very much going to be needed as we handle the management aspects, and I'm happy to help you work through that. I did clear it with Hagana that he was ok with me talking to you about the issues he has expressed regarding Ned and LEP more broadly.

I'm sure we can get on the same page when we meet and I'm hoping we'll take away some next steps to keep this in motion.

Take care,

Claire

**From:** Cheryl Hardy <chardy1@law.upenn.edu>
**Sent:** Wednesday, October 8, 2025 10:21 AM
**To:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Subject:** RE: I Need To Speak With You As Soon As Possible

This is very important, Claire.  I just left the call with Angela.  She expressed that she is no longer allowed to speak with me about Hagana.  She also said that you were not permitted to tell me that Hagana had spoken with you and Chris.

If you guys want to handle things that is perfectly fine with me.   How you all want lo proceed.  It is out of my hands.

Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104



**From:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Sent:** Wednesday, October 8, 2025 10:16 AM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Subject:** RE: I Need To Speak With You As Soon As Possible

Hi, Cheryl,

I'm in a meeting until about 11:30 and then another at noon.  Are you free at 2:00?

Wish it could be sooner, but this day is busy!!

Claire

**From:** Cheryl Hardy <chardy1@law.upenn.edu>
**Sent:** Wednesday, October 8, 2025 10:14 AM
**To:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Subject:** I Need To Speak With You As Soon As Possible

Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104



Exhibit B

**From:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Sent:** Thursday, October 9, 2025 1:01 PM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Cc:** Angela Cabrera <angelacm@law.upenn.edu>
**Subject:** Support for LEP

Dear Cheryl,

I received and have approved your request for four sick days, and hope you are doing well.  Upon your return, we'll touch base on your input and responses to Hagana's complain so that we can partner on drafting an action plan.  When you're back in the office, I'd like to also discuss the meeting we had with Angela yesterday, October 8.

Page 1 of 2

Take good care of yourself and I look forward to connecting with you upon your return.


All best,


Claire


--

Claire E. Wallace  L'95

Senior Associate Dean, Academic Affairs

Penn Carey Law Registrar

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104

Registrar's Office: reg@law.upenn.edu



Exhibit C



**Absence Entries**

| | |
|---|---|
| Request Amount | 32 Hours |
| Request History | Absence Request: |

**Approved**

| | |
|---|---|
| Status | Approved |
| Request Dates | Tue, Oct 14, 2025 – Fri, Oct 17, 2025 |
| Type of Absence | Sick Leave |
| Duration per Day | 8 Hours |
| Reason | Sick - Self |
| Comment | Hi Cheryl ▮ I'll make sure that ▮ and ▮ have what they need to continue producing next week in my absence, nothing else should be affected. |

Cancel Absence    Edit

Page 1 of 1

# Exhibit D

**From:** Cheryl Hardy
**Sent:** Sunday, October 12, 2025 10:52 AM
**To:** Angela Cabrera <angelacm@law.upenn.edu>; Christopher Wailoo <wailoo@law.upenn.edu>
**Cc:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Subject:** RE: Hardy, Cheryl - 66538572 : FMLA Leave Leave Notification

Dear Angela,

Prior to you submitting an unauthorized "proactive" FMLA request, I had requested the four (4) days of FMLA that I thought I needed to manage my condition. These days were approved by Claire Wallace in Workday, which was, and is, clearly visible to you, and confirmed via an email from Claire Wallace on which you were copied.

By "we", are you stating that you and Christopher Wailoo were acting "proactively" in submitting the extended FMLA and delegating you and Claire Wallace my managerial responsibilities in Workday, further comprising my ability to

Page 1 of 13

maintain my physical health and well-being and removing my ability to manage my chronic autoimmune condition by using my FMLA as needed?  I am fully aware of my rights and responsibilities regarding FMLA, which has absolutely nothing to do with my filing a complaint.

You, I am using "you" in both the singular and plural here, since I am not certain if your "we" is referencing both you and Christopher Wailoo, submitted a request in Workday placing me on FMLA from 10/09 – 10/31/25.  This was an unauthorized action.  I did not request this FMLA time and by way of email Friday, October 10, 2025, 5:48pm, Claire Wallace, when asked if she made these requests replied, "I did not. I am copying Angela here and ask that she reply."

**Section 631.5** of the University of Pennsylvania FMLA Policy and Procedures Manual provides that:

<u>**Employees**</u> seeking FMLA <u>must initiate their leave through Workday</u>. . . .

If an Employee is **unable to make the request** on his/her own or unable to complete all or part of the two step FMLA application process, **the employee's supervisor may** complete one or more steps on the employee's behalf, <u>upon request of the employee</u> or the employee's representative (emphasis added).

Overruling the four days that I had submitted, an unauthorized request was submitted extending my leave from 10/09 – 10/31, an unauthorized action in contravention of **Section 631.5** of the University of Pennsylvania FMLA Policy and Procedure Manual and making Central HR complicit in your actions and interfering with my ability to manage my giant cell arteritis via taking sick days when I may need them.

You, again, "you" is being used both singularly and plurally here, then went into Workday overriding protocol and security and delegating Angela Cabrera and Claire Wallace my managerial Workday responsibilities and making Ian Semmler complicit in your actions.  This was an unauthorized action.  I was not, and I am not, by any means incapacitated and would not be out for a long duration of time. In fact, I will be returning to work tomorrow, Monday, October 13, 2025.  Claire Wallace likewise indicated that she did not authorize this action:

**From:** *Claire E. Wallace <cwallac2@law.upenn.edu>*
**Sent:** *Friday, October 10, 2025 5:51 PM*
**To:** *Cheryl Hardy <chardy1@law.upenn.edu>*
**Subject:** *Re: Workday Delegated Tasks Update*

*I got notice from Ian that I was your delegate.*

*Claire*

*\*enviado de mi iphone\**

Page 2 of 13

*On Oct 10, 2025, at 4:49 PM, Cheryl Hardy <[chardy1@law.upenn.edu](mailto:chardy1@law.upenn.edu)> wrote:*

*Hi Claire,*

*Did you also process a request to have you and Angela placed as delegates in Workday on my behalf, <u>as I did not</u>. Workday requires that **I** delegate my tasks by following these steps:*

*To delegate tasks in Workday, navigate to your tasks or inbox, select "Manage Delegations," and click "New" or "Manage Delegations" to set up a new delegation. You must specify a delegate, a start date, and an end date, and then choose what tasks the delegate can perform, such as "Start on my behalf" or "Do my inbox tasks". It is best practice to set a specific end date, and all delegations must be approved by a Security Partner.*

## Step-by-step guide

1. ***Access delegation settings**: Go to your Workday inbox, click the dropdown menu in the top right corner, and select "Manage Delegations".*

1. ***Initiate a new delegation**: Click on the "Manage Delegations" button to create a new one.*

1. ***Set a date range**: Enter a "Begin Date" and a mandatory "End Date" for the delegation.*

1. ***Choose a delegate**: Search for and select the employee who will be taking over your tasks.*

1. ***Specify task permissions**:*

    1. ***Start on My Behalf**: Choose specific tasks the delegate can initiate on your behalf, like creating an expense report.*

    2. ***Do Inbox Tasks on My Behalf**: Select "For All Business Processes" or choose specific business processes for the delegate to complete in their inbox.*

1. ***Set retention of access**: Decide whether you want to "Retain Access" to the delegated tasks.*

1. ***Submit for approval**: Click "Submit" to send the delegation request for approval.*

## Important considerations

1. ***Approval**:*

    *All delegations must be approved by a UPenn Security Partner, and delegations lasting more than a year require extra approval.*

2. ***Best practices**:*

*Always include an end date for delegations and ensure the delegate is in a similar or higher position of authority.*

3. **Functionality:**

*Delegation is temporary and does not remove responsibility from you as the original task owner.*

4. **Security:**

*Be mindful of the level of access you grant to avoid fraud or compliance issues.*

<u>I did not take any of these steps,</u> *but someone must have.  I have never delegated my supervisory responsibilities in Workday.  Sick or not, I have never, not once, not fulfilled my supervisory tasks in Workday.*

As I have continued to state - I did not take these steps.  Further, if my tasks were to be delegated, they must be delegated to someone higher than myself, in this case it would have been Claire Wallace and Polk Wagner, to whom I report.  I could not delegate my tasks to Angela Cabrera.  Continuity was never in jeopardy,  since I would not be out for any duration of time and can approve time off requests and hours.

Your actions are further jeopardizing my physical health and wellbeing.

Best,

Cheryl

Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104



**From:** Angela Cabrera <angelacm@law.upenn.edu>
**Sent:** Saturday, October 11, 2025 9:41 AM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Cc:** Claire E. Wallace <cwallac2@law.upenn.edu>

**Subject:** RE: Hardy, Cheryl - 66538572 : FMLA Leave Leave Notification

My apologies, Cheryl, I forgot to respond to the ████ question.

Yes, ████ was informed of his rights and responsibilities under the Family and Medical Leave Act (FMLA) at the time his PTO was requested.

Angela M. Cabrera

Executive Director, Human Resources

University of Pennsylvania Carey Law School

**From:** Angela Cabrera
**Sent:** Saturday, October 11, 2025 9:30 AM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Cc:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Subject:** RE: Hardy, Cheryl - 66538572 : FMLA Leave Leave Notification

Dear Cheryl,

Thank you again for your message and for clarifying the nature of your recent absence.

Based on the information you shared regarding the use of four sick days, and in the absence of a need for extended leave, we will proceed with withdrawing the FMLA request that was initiated. This withdrawal will be reflected in Workday.

The request was submitted proactively to ensure your rights under the Family and Medical Leave Act were protected, should the situation have required it. Our intent was to support you and ensure operational continuity—not to make assumptions about your leave duration.

Given your mention during Thursday's meeting of possibly taking leave and filing a complaint, we wanted to ensure you had access to all relevant information and resources. If at any point FMLA becomes applicable, we are here to assist with the process and ensure compliance with University policy.

I'm happy to connect next week if you'd like to discuss this further or if there's anything else I can do to support you.

Page 5 of 13

Have a great weekend,

Angela.


Angela M. Cabrera

Executive Director, Human Resources

University of Pennsylvania Carey Law School


**From:** Cheryl Hardy <chardy1@law.upenn.edu>
**Sent:** Friday, October 10, 2025 8:31 PM
**To:** Angela Cabrera <angelacm@law.upenn.edu>
**Cc:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Subject:** Re: Hardy, Cheryl - 66538572 : FMLA Leave Leave Notification


Dear Angela,


My four sick days were noted in Workday and confirmed in Claire's email. I do not understand how this was missed and your stating you are just noting this now.


I was completely aware that three or more days sick days now require FMLA and submitted the required forms to my treating physician for completion.


I do not understand why a request of 10/9 - 10/31 was submitted. To confirm, you initiated a request for FMLA for this duration of time.


Claire - since you approved ████████ request for 4 days off, was ████████ made aware that ██ request must be treated as FMLA and required treating physician forms must be completed to ensure that we are in compliance with University requirements and procedures?


As to the delegation, thank you for removing.


Best,

Cheryl

Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104



**From:** Angela Cabrera <angelacm@law.upenn.edu>
**Sent:** Friday, October 10, 2025 7:51 PM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Cc:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Subject:** RE: Hardy, Cheryl - 66538572 : FMLA Leave Leave Notification

Hi Cheryl,

Thank you for reaching out and sharing your concerns.

To clarify, the delegation was initiated to ensure that ▓▓▓▓ timesheets were approved in your absence, in line with compliance requirements discussed in previous Director's meetings and recent communications. This step was taken solely to maintain continuity and ensure timely approval of hourly time entries.

Regarding the FMLA request: it was submitted because your sick leave request exceeded three consecutive days, which automatically triggers an FMLA review under University policy. Based on your note below indicating a return next Wednesday, the delegation will be removed, and the FMLA request will no longer be necessary once your physician's documentation is received and the dates are updated accordingly.

I understand this situation may have caused confusion, and I appreciate your patience as we work through it. Please don't hesitate to reach out if you have any further questions or would like to discuss this in more detail.

Best regards,

Angela

Angela M. Cabrera

Executive Director, Human Resources

University of Pennsylvania Carey Law School

---

**From:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Sent:** Friday, October 10, 2025 5:50 PM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Cc:** Angela Cabrera <angelacm@law.upenn.edu>
**Subject:** Re: Hardy, Cheryl - 66538572 : FMLA Leave Leave Notification

Hi - again I think Angela can address this.

Best,

Claire

*enviado de mi iphone*

> On Oct 10, 2025, at 4:38 PM, Cheryl Hardy <chardy1@law.upenn.edu> wrote:
>
> Hi Claire,
>
> Did you put through additional sick days for me?  I requested four sick days for 10/9, 10/10, 10/13, 10/14 and I have submitted the required paperwork to my physician for those days.
>
> I received the below from Penn HR FMLA notifying me that my sick days would run from **10/9** through **10/31**.  I did not request this amount of time off. When connecting with Dawn Lewis in Penn HR-FMLA, she indicated that someone must have requested these days:
>
> *Someone had to request the FMLA days, which means if you did not, your manager or someone else in the department requested the FMLA time.*

**Page 8 of 13**

I told her, I did not.  I only requested the four (4) days.  She is not sure of why the days are off as she did not process that request.

Dawn has advised me that once my paperwork comes in the dates will be updated appropriately and only the requested dates will be entered.

Best,

Cheryl

Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104



**From:** HR FMLA <HRFMLA@hr.upenn.edu>
**Sent:** Friday, October 10, 2025 10:58 AM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Subject:** RE: Hardy, Cheryl - 66538572 : FMLA Leave Leave Notification

Once the completed paperwork is received the dates will be updated appropriately.  We only enter the requested dates so I am not sure since I did not process the leave request.

Thanks,

Dawn Lewis

Senior Benefits Specialist, FMLA/STD

Division of Human Resources

University of Pennsylvania

600 Franklin Building |3451 Walnut Street | Philadelphia, PA 19104 - 6205

Phone: 215-898-7286

Fax: 215-405-2929

Email: dawnlew@upenn.edu

URL: www.hr.upenn.edu

 Before printing this email, be sure it's necessary. **_Stop. Think. Recycle._**

---

**From:** Cheryl Hardy <chardy1@law.upenn.edu>
**Sent:** Friday, October 10, 2025 10:54 AM
**To:** HR FMLA <HRFMLA@hr.upenn.edu>
**Subject:** Re: Hardy, Cheryl - 66538572 : FMLA Leave Leave Notification

Hi Dawn,

I see. Yes, I requested four sick days, yesterday and today and Monday 10/13 and Tuesday 10/14. It is my hope to return on Wednesday. My doctor will be submitting the required forms to cover those days.

I was thrown off because I only requested four days, so I did not understand why the email states from 10/9 through 10/30. Is this how it is done? I have to be out until 10/30?

Thanks Dawn,

Cheryl

Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104



---

**From:** HR FMLA <HRFMLA@hr.upenn.edu>
**Sent:** Friday, October 10, 2025 10:01 AM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Subject:** RE: Hardy, Cheryl - 66538572 : FMLA Leave Leave Notification


Cheryl,
 Penn Policy indicates if you are using more than 3 consecutive sick days, you are required to request FMLA and submit the required paperwork. Someone had to request the FMLA days, which means if you did not, your manager or someone else in the department requested the FMLA time.


Thanks,

Dawn Lewis
Senior Benefits Specialist, FMLA/STD
Division of Human Resources
University of Pennsylvania
600 Franklin Building |3451 Walnut Street | Philadelphia, PA 19104 - 6205
Phone: 215-898-7286
Fax: 215-405-2929
Email: dawnlew@upenn.edu
URL: https://nam02.safelinks.protection.outlook.com/?
url=http%3A%2F%2Fwww.hr.upenn.edu%2F&data=05%7C02%7Cchardy1%40law.upenn.edu%7
C81271a37a64540bb6b6508de08059339%7C6cf568beb84a4e319df6359907586b27%7C0%7C0
%7C638957017208576526%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGkiOnRydWUsIlYiO
iIwLjAuMDAwMCIsIlAiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sd
ata=0R3pOnx0fvLOng0mxxbceToHe8YPH2zNUhnnR6xkHLQ%3D&reserved=0

Π Before printing this email, be sure it's necessary. Stop. Think. Recycle.


-----Original Message-----
From: Cheryl Hardy <chardy1@law.upenn.edu>
Sent: Friday, October 10, 2025 10:00 AM
To: HR FMLA <HRFMLA@hr.upenn.edu>
Subject: RE: Hardy, Cheryl - 66538572 : FMLA Leave Leave Notification

Hi,

I do not understand why I am receiving the below email.  I did not request FMLA from 10/09/2025 to 10/31/2025.  I requested four (4) sick days, 10/9, 10/10, 10/13 and 10/14.

An alert came up on Workday that sick days in excess of three days must now be considered under FMLA, is this correct.

Again, I only requested four sick days with the hope of returning to work next week.

Please advise on next steps.

Thanks,
Cheryl Hardy


Cheryl D. Hardy, L'94
Associate Dean, Professional Engagement
& Strategic Initiatives, Legal Education Programs University of Pennsylvania Carey Law School
3501 Sansom Street, Philadelphia, PA 19104


-----Original Message-----
From: leavesource-email@leavesource.com <leavesource-email@leavesource.com> On Behalf Of fmla@hr.upenn.edu
Sent: Friday, October 10, 2025 9:39 AM
To: Cheryl Hardy <chardy1@law.upenn.edu>; Cheryl Hardy <chardy1@law.upenn.edu>
Subject: Hardy, Cheryl - 66538572 : FMLA Leave Leave Notification

[This sender might be impersonating a domain that's associated with your organization. Learn why this could be a risk at https://nam02.safelinks.protection.outlook.com/?url=https%3A%2F%2Furldefense.com%2Fv3%2F__https%3A%2F%2Faka.ms%2FLearnAboutSenderIdentification__%3B!!IBzWLUs!SuudiomlK-c8Af3YLpvXZaCwFvGtfueUucjOlXQleRktT9CabTmfDjoyDMiX1VgwKfz3Xh4ZlbIdXRbMZ9ik5w%24&data=05%7C02%7Cchardy1%40law.upenn.edu%7C81271a37a64540bb6b6508de08059339%7C6cf568beb84a4e319df6359907586b27%7C0%7C0%7C638957017208625466%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGkiOnRydWUsIlYiOiIwLjAuMDAwMCIsIlAiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=J3BbPZhMuppu%2F0utXfDx%2BnbUsyD9s45fEhXTXBr5DH0%3D&reserved=0 ]

CAUTION:This message was sent from outside your organization. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

October 10, 2025

Re: FMLA Eligibility for Cheryl Hardy

Dear Cheryl,

We have been notified of your need to take a Federal FMLA leave of absence from work. You have reported your anticipated leave dates as 10/09/2025 thru 10/31/2025.

You are eligible for the following leave types as of the start date of your leave:  Serious Health Condition -  Self.

To help us complete our review of your request for an FMLA leave of absence, you have up to 15 days from the date of this letter to complete and return the required medical certification(s) to us. **If you have already submitted your paperwork, you do not need to take any further action at this time.** The certification(s) must be emailed to fmla@hr.upenn.edu or faxed to (215) 405-2929. If the paperwork is not received by this due date, it will result in denial of your request for an FMLA leave of absence. Please be sure to review the attached Employee Rights and Responsibilities under the Family and Medical Leave Act for more details.

It is important to note that being eligible for a leave is not the same as being approved for a leave of absence. Your request will remain in a pending status until we receive the required medical certification form(s) by the deadline stated above. It is your responsibility to ensure we receive the required forms by the due date.

What happens next?
You will receive a claim decision from our office via both email and USPS mail. If we need additional information, we will let you know.

If anything changes in your status or the dates associated with your requested leave of absence, you are required to notify us as soon as possible. This includes any new return to work dates or extension requests that differ from the original request.

Should you have any questions regarding your leave of absence request, please email our office at fmla@hr.upenn.edu.

Sincerely,

FMLA Leave Administrators

# Exhibit E

**From:** Cheryl Hardy
**Sent:** Friday, October 10, 2025 6:15 PM
**To:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Subject:** RE: Workday Delegated Tasks Update

I also noticed that someone has gone in and approved the sick days that ▬▬▬ requested. Did you approve the request as a delegate? It is no longer in my Workday Inbox.

Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104



**From:** Cheryl Hardy
**Sent:** Friday, October 10, 2025 6:06 PM
**To:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Subject:** RE: Workday Delegated Tasks Update

Someone had to request this a put this through.  It requires security overrides.   This is highly unethical.

Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104



**From:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Sent:** Friday, October 10, 2025 5:51 PM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Subject:** Re: Workday Delegated Tasks Update

I got notice from Ian that I was your delegate.

Claire

*enviado de mi iphone*

On Oct 10, 2025, at 4:49 PM, Cheryl Hardy <chardy1@law.upenn.edu> wrote:

Hi Claire,

Did you also process a request to have you and Angela placed as delegates in Workday on my behalf, as I did not.  Workday requires that I delegate my tasks by following these steps:

To delegate tasks in Workday, navigate to your tasks or inbox, select "Manage Delegations," and click "New" or "Manage Delegations" to set up a new delegation. You must specify a delegate, a start date, and an end date, and then choose what tasks the delegate can perform, such as "Start on my behalf" or "Do my inbox tasks". It is best practice to set a specific end date, and all delegations must be approved by a Security Partner.

## Step-by-step guide

1. **Access delegation settings**: Go to your Workday inbox, click the dropdown menu in the top right corner, and select "Manage Delegations".

1. **Initiate a new delegation**: Click on the "Manage Delegations" button to create a new one.

1. **Set a date range**: Enter a "Begin Date" and a mandatory "End Date" for the delegation.

1. **Choose a delegate**: Search for and select the employee who will be taking over your tasks.

1. **Specify task permissions**:

   1. **Start on My Behalf**: Choose specific tasks the delegate can initiate on your behalf, like creating an expense report.

   2. **Do Inbox Tasks on My Behalf**: Select "For All Business Processes" or choose specific business processes for the delegate to complete in their inbox.

1. **Set retention of access**: Decide whether you want to "Retain Access" to the delegated tasks.

1. **Submit for approval**: Click "Submit" to send the delegation request for approval.

## Important considerations

1. **Approval**:

   All delegations must be approved by a UPenn Security Partner, and delegations lasting more than a year require extra approval.

2. **Best practices**:

   Always include an end date for delegations and ensure the delegate is in a similar or higher position of authority.

3. **Functionality**:

Delegation is temporary and does not remove responsibility from you as the original task owner.

4. **Security**:

Be mindful of the level of access you grant to avoid fraud or compliance issues.

<u>I did not take any of these steps,</u> but someone must have.  I have never delegated my supervisory responsibilities in Workday.  Sick or not, I have never, not once, not fulfilled my supervisory tasks in Workday.

I tried to contact you by phone twice, but my calls went to your voicemail.

Best,
Cheryl

Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104

<image001.png>

**From:** Workday@Penn <upenn@myworkday.com>
**Sent:** Friday, October 10, 2025 1:59 PM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Subject:** Workday Delegated Tasks Update

The following delegation has been approved:

Delegate: Claire Wallace

Begin Date: 10/10/2025

End Date: 10/31/2025

All Business Processes: Yes

Specific Business Processes: ...

Retain Access to Delegated Tasks: Yes

Click here

This email was intended for chardy1@law.upenn.edu · Manage Preferences
University of Pennsylvania · Philadelphia, PA

# Exhibit F

2:40

< 4    **Claire** ›

...eak with you as soon as possible.

Fri, Oct 10 at 5:19 PM

Hi **Claire**, I sent you two emails with questions. Best, Cheryl.

Hi Cheryl – I will look at your emails soon. Hope all is well. Claire

I've copied Angela on your messages. I think she can best answer the FMLA and Workday delegation. I have not submitted anything other than what came in to my inbox today – ▇▇▇▇ requested time off and I see ▇▇▇▇ time sheet is in. I will go ahead and approve that as well. Let me know if you have any questions and I wish you a speedy recovery. Claire

Did you authorize Angela to request additional sick days that I did not request? Did you authorize Angela to go in and delegate my tasks to you?

Read 10/10/25

+    iMessage

# Exhibit G

| | |
|---|---|
| **Subject:** | Fwd: Formal Grievance |
| **Date:** | Wednesday, February 4, 2026 at 8:53:48 PM Eastern Standard Time |
| **From:** | Cheryl Hardy <cnc1233@gmail.com> |
| **To:** | Robert Vance <rvance@vancelf.com> |
| **Attachments:** | image001.png |

Exhibit J

---------- Forwarded message ---------
From: **Cheryl Hardy** <chardy1@law.upenn.edu>
Date: Fri, Oct 10, 2025 at 8:33 AM
Subject: Formal Grievance
To: Carrington, Lynnea N <lynnea@upenn.edu>
Cc: Cheryl Hardy <cnc1233@gmail.com>

Dear Ms. Carrington,

Unfortunately, I find myself in a tenuous position where I feel I have no recourse but to file a formal complaint against my manager, Claire Wallace, Senior Associate Dean of Academic Affairs and Registrar, Angela Cabrera, Director of Human Resources, and her manager, Christopher Wailoo, Associate Dean and CFO.

I am very concerned with retaliation as I report directly to Claire Wallace, I have reclassifications and actions that are before, Angela Cabrera, and Chris Wailoo has direct oversight over my budget and resources.

After a contentious conversation with Claire Wallace and Angela Cabrera at 2:00 pm, this past Tuesday, October 8, I am taking four sick (4) days to pull myself together, which now requires FMLA. I have a stress induced autoimmune condition known as giant cell arteritis, a condition that is exacerbated and flairs up when I am under a tremendous amount of stress. My condition places me at risk of vision loss, aneurisms, and stroke. I was diagnosed with this condition just over a year and a half ago, April 2024. I am currently under the care of a physician, Dr. Colin Ligon, M.D., Rheumatologist, Penn Medicine Valley Forge, and I am currently taking medication to manage my condition. I have taken the required FMLA forms to Dr. Ligon's office and have asked that he complete the forms and submit the forms to fax number as indicated. I was advised by the administrator that this might take several days to complete but the forms will be completed and sent in.

I have copied my personal email address, and my phone number is 484-431-5552.

I am very unfamiliar with these processes and not familiar with how things work.

Best regards,

Cheryl Hardy

Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104



# Exhibit H

# Family and Medical Leave (FMLA)

Eligible employees may be entitled to leave under the federal Family and Medical Leave Act (FMLA) for specified family and medical reasons.

## 631.2 ELIGIBILITY

To be eligible for FMLA benefits, an employee must have been employed by the University for at least twelve (12) months and have worked for at least 1,250 hours during the 12-month period immediately preceding the start of the leave. Periods of approved military leave should be counted when calculating these hours of service requirements for FMLA leave. The employee must also be employed at a worksite of the University where 50 or more employees are employed by the University within 75 miles of that worksite.

## 631.3 QUALIFIED LEAVE REASONS

The University will grant FMLA leave to eligible employees for the following reasons:
1.  The employee's serious health condition;
2.  The birth and care of the employee's child;
3.  Placement with the employee of a child for adoption or foster care;
4.  Care of the employee's spouse, child, or parent with a serious health condition;
5.  Because of a "qualifying exigency" relating to the active-duty status or call to active-duty in the armed forces of a spouse, son, daughter, or parent of the employee, including those contingencies set forth in the applicable regulations, summarized as follows:

   a.   short-notice deployment;
   b.   military events and related activities;
   c.   to arrange for childcare, or provide childcare on an urgent basis, or for school activities;
   d.   to make financial or legal arrangements;
   e.   to attend counseling;
   f.   to spend time with the service member while on short-term leave;
   g.   for post-deployment activities; and
   h.   for other activities in accordance with the regulations.

6.   Because care is required for a family member or next of kin who is a covered service member (i.e., member of the U.S. armed forces, National Guard or Reserves) who is undergoing medical treatment, recuperation, or therapy, or is otherwise in outpatient status on the temporary disability retired list, for a serious injury or illness.

Leave for the birth and care, or placement and care of a child must conclude within twelve (12) months of the birth or placement of the child. FMLA applies equally to male and female employees.

## 631.4 DEFINITIONS

1.   **Employee** means faculty or staff member employed by the University on a full time, part time or temporary basis.

2.   **Serious Health Condition** means an illness, injury, impairment, or physical or mental condition that involves either:

   a.   inpatient care in a hospital, hospice or residential medical care facility, or

   b.   continuing treatment by a health care provider.

3.   **Continuing treatment** means, in broad terms:

   a.   A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment thereof, or recovery there from) of more than three (3) consecutive calendar days (and any subsequent treatment or period of incapacity involving the same condition) involving treatment two (2) or more times by a health care provider--within thirty (30) days of the incapacity--or treatment by a health care provider on at least one occasion that results in a regimen of continuing treatment under the health care provider's supervision.

   b.   Any period of incapacity due to pregnancy or prenatal care.

   c.   Any period of incapacity or treatment for such incapacity due to a chronic serious health condition that requires periodic visits for treatment by a health care provider; continues over an extended period of time; and may cause episodic rather than continuing incapacity (e.g., asthma, diabetes, epilepsy, etc.).

   d.   A period of incapacity that is permanent or long-term due to a condition for which treatment may not be effective (e.g., Alzheimer's, severe stroke, terminal stages of a disease).

   e.   Any period of absence to receive multiple treatments by a health care provider either for restorative surgery after an accident or injury or for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment (e.g., chemotherapy for cancer, physical therapy for severe arthritis, or dialysis for kidney disease).

4.   **Parent** means the biological [or adoptive] parent of an employee or an individual who stands or stood in the place of a parent to an employee when the employee was a child.

5.   **Child** means a biological, adopted, or foster child, a stepchild, a legal ward, or a child of a person standing in the place of a parent who is under eighteen (18) years of age or 18 years of age or older and incapable of self-care because of a mental or physical disability.

6.   **Health care provider** means a physician, dentist, podiatrist, clinical psychologist, or optometrist who is authorized to practice medicine or surgery in the state in which the individual practices his/her profession. In cases limited to treatment consisting of manual manipulation of the spine to correct a subluxation, medical certification may be provided by a chiropractor.

7.   **Next of kin** means nearest blood relative.

8.  **Covered service member** means a member of the United States armed forces, National Guard, or reserves.

9.  **Serious injury or illness** means an injury or illness incurred by a covered service member in the line of duty on active duty that may render him or her unfit to perform the duties of his or her office, grade, rank, or rating.

## 631.5 APPLICATION PROCESS

Employees seeking FMLA leave must initiate their leave through Workday. For step-by-step instructions, visit the Workday website and access the Workday tip sheet, Self-Service: Self-Service: Request Leave of Absence.

Upon the submission of a leave request, Workday will issue a notification to the employee. This notification will include a direct link to the pertinent medical forms required for the leave.

If an employee is unable to make the request on his/her own or unable to complete all or part of the two-step FMLA application process, the employee's supervisor may complete one or more steps on the employee's behalf, upon request of the employee or the employee's representative.

Employees using intermittent leave or leave on a reduced schedule must make a reasonable effort to avoid disrupting University operations, including scheduling doctor's appointments outside of work hours. An employee using intermittent leave must, on a continuing basis, enter the intermittent leave time in Workday by entering the hours in the "Request Time Off" application after the employee has been approved for FMLA Intermittent leave.

Failure to follow this policy may delay or postpone the commencement of the FMLA leave and/or result in disciplinary action.

## 631.6 NOTICE TO EMPLOYEE

After an employee has requested an FMLA leave in Workday the FMLA Administrator will provide the employee with a written Notice of Eligibility and Rights and Responsibilities and any other pertinent information concerning the status of the FMLA leave.

## 631.7 CERTIFICATION BY HEALTH CARE PROVIDER

If FMLA leave is based on a serious health condition, whether it involves the employee or a family member (parent, spouse, or child), medical certification from a health care provider will be required and must be submitted to the FMLA Administrator. Failure to provide such certification to the FMLA Administrator may result in a delay or denial of the employee's request for leave. Where a medical certification is required, that certification must be provided within fifteen (15) calendar days of the leave request. Employees should be aware that, under certain circumstances, a recertification may be required. In addition, employees may be required to report on their intent to return to work. Finally, if the anticipated duration of an employee's FMLA leave changes (e.g., due to a change in the employee's health condition or other circumstances), the employee is required to notify the FMLA Administrator promptly (i.e., within two business days) of this change.

If an FMLA leave request is based on a qualifying exigency due to active duty service or a call to active-duty service, the employee may be required to provide a copy of the active-duty order or other appropriate documentation, as well as certification and documentation from the employee containing information supporting the qualifying exigency. When leave is taken to care for a covered service member, the employee may be required to provide certification from an authorized health care provider.

Employees using FMLA leave of any kind are prohibited from performing University work either in the workplace or at any other location, including the employee's home; the prohibition on working while on FMLA leave also applies to work performed for other employers, except in limited circumstances. When returning to work from an FMLA leave taken because of the employee's own serious health condition, the employee will be required to provide a return to work note from the employee's health care provider to the FMLA Administrator prior to reporting back to the workplace.

## 631.8 LENGTH OF LEAVE

Eligible employees may be entitled to up to twelve (12) weeks of unpaid FMLA leave during any rolling 12-month period (which period is measured backward from the date an employee uses any FMLA leave). Each time an employee takes FMLA leave, the remaining leave entitlement equals the balance of the 12 weeks that has not been used during the immediately preceding twelve (12) months.

An eligible employee who is the spouse, son, daughter, parent, or next of kin of a covered service member shall be entitled to a total of (26) workweeks of FMLA leave during a 12-month period to care for the service member. The leave in this paragraph shall only be available during a single 12-month period, though that leave entitlement shall be applied on a per-covered-service member, per-injury basis.

In certain circumstances, employees may take intermittent FMLA leave or FMLA leave on a reduced leave schedule. Intermittent leave or leave on a reduced schedule may be taken only if medically necessary to care for a seriously ill family member or because of the employee's own serious health condition. Intermittent leave or leave on a reduced schedule to care for a child following its birth or placement for adoption or foster care will be allowed based on business needs and only with prior written approval, which will be provided by the FMLA Administrator.

Where both spouses are employed by the University, they are each entitled to twelve (12) weeks of FMLA leave for the birth and care of their newborn child, or for the care and placement with them of a child for adoption or foster care. However, if the employee takes leave under the University's Sick Leave, Paid Parental Leave, Paid Time Off and/or Short-Term Disability programs in these circumstances, the twelve (12) weeks of unpaid FMLA will run concurrently with any leave taken under any of these programs.

## 631.9 THE INTERPLAY BETWEEN PAID LEAVE AND FMLA LEAVE PERIODS

In all circumstances necessitating a leave, employees will use paid sick leave and paid time off (PTO) for which the absence qualifies and will also be expected to apply for any Short-Term Disability (Policy 404), Long-Term Disability (Policy 405) or Workers' Compensation benefits to which they are entitled during the leave (as determined under the terms of those programs). The employee's sick leave, PTO and any STD/LTD/WC benefit periods will run concurrently with the days as to which an employee's FMLA leave entitlement applies. In other words, paid leave is substituted for unpaid leave and will be counted toward the twelve (12) weeks of FMLA leave.

## 631.10 BENEFITS DURING LEAVE

During any FMLA leave, the University will maintain the employee's medical, dental, vision, life and disability insurance coverage on the same conditions that coverage would have been provided if the employee had been continuously employed during the entire leave period. The University and the employee will each continue to pay their portion of the benefit costs. In some instances, the University may recover premiums (on a prorated basis) it had paid to maintain health coverage for an employee who fails to return to work from FMLA leave.

During an FMLA leave, sick leave and PTO will continue to accrue only during that portion of the leave which is paid by using sick leave or PTO. During any unpaid FMLA leave, or during a period of Short-Term Disability, Long-Term Disability or Workers' Compensation, sick leave and PTO will not accrue. Where the FMLA leave is taken on an intermittent basis or as a reduced-schedule, sick leave and PTO will continue to accrue during the leave on a prorated basis.

## 631.11 RETURN FROM LEAVE

Normally, employees returning from FMLA medical leave will be reinstated to the same or an equivalent position, with equivalent pay, benefits and other terms and conditions of employment. Failure to return to work if the employee no longer qualifies for FMLA leave (or another type of permissible leave) may result in termination of employment. However, at times, departments, schools and/or centers may restructure due to changing business and operational needs and the need to continually enhance programs and services. These restructuring initiatives may result in position discontinuations or terminations, even positions held by employees out on FMLA leave. If a staff member on FMLA leave has his/her position discontinued, the employee will be given at least thirty (30) days written notice of the position discontinuation and will be informed of any applicable benefits that the employee may be eligible to receive under the Position Discontinuation and Staff Transition Program.

Employees returning from an FMLA leave for a serious health condition or pregnancy must provide the FMLA Administrator with a signed doctor's note on letterhead documenting their fitness to return to work. Employees who are unable to return to work at the end of the approved FMLA leave should notify the FMLA Administrator at least two (2) weeks in advance (where possible) and must have the physician re-certify their medical need for continued leave.   Supervisors should contact Human Resources to discuss alternatives prior to taking any action if staff members are unable to return to work and have exhausted their approved leave.

In addition, except as provided in this policy, an employee's use of FMLA leave will not result in the loss of any employment benefit that the employee earned before using FMLA leave. Use of FMLA leave will not be counted against the employee under a "no-fault" attendance policy.

## 631.12 OTHER LEAVE ARRANGEMENTS

The determination of whether an employee qualifies for FMLA leave will be made by the FMLA Administrator. If an employee is ineligible for leave under FMLA or has exhausted his/her 12 weeks of FML leave, and is further not entitled to paid STD, LTD or Workers' Compensation leave, the employee may apply for or leave as a reasonable accommodation under the Americans with Disabilities Act (ADA) or additional leave under Policy 616 (Leave of Absence without Pay) subject to the terms of such Policy.

## 631.13 FOR MORE INFORMATION

Information can be obtained by contacting the FMLA Administrator or by seeking information from the employee's supervisor or Human Resources. In addition, a poster has been placed in Human Resources which includes further details regarding eligibility and other requirements of the law. Employees of temporary staffing agencies should contact their agency directly for information regarding their rights under the FMLA (see Policy 112, Using Temporary Agencies). Questions of interpretation under this policy will be resolved by reference to the FMLA and regulations issued by the United States Department of Labor. Employee's rights under this policy shall in no case be less than those afforded by the FMLA.

## 631.14 EMPLOYEE ASSISTANCE PROGRAM (EAP)

Dealing with issues that qualify for Family and Medical Leave (FMLA) can be challenging. Returning to work following FMLA can be stressful. For these and other matters, the University offers the Employee Assistance Program (EAP) for free, confidential, one-to-one support at any time. The EAP can be reached 24 hours a day, 7 days a week to help the employee manage the issues at hand and prepare for a successful return to the workplace.  The employee may call 1-888-503-2380 to speak with a counselor. The employee can also find useful information on the EAP website.

## 631.15 UNIVERSITY STAFF WHO ARE COVERED BY COLLECTIVE BARGAINING AGREEMENTS

University staff members who are covered by collective bargaining agreements should refer to the appropriate contract article.

## 631.16 EMPLOYEES WORKING IN OTHER JURISDICTIONS

The benefits and policies for University of Pennsylvania employees who work in locations outside of the Commonwealth of Pennsylvania may be different from the benefits and policies set forth in this website. Employees working outside the Commonwealth of Pennsylvania should contact Human Resources for more information.

Policy Number: 631
Effective Date: 07/01/2016
Last Reviewed Date:  6/17/2019
Revised Date:  07/01/2019
Supersedes Policy Number(s): 631 (Family and Medical Leave Act–02/01/1998), 631 (11/01/1998, 02/20/2002, 04/01/2009, 07/1/2015)
Applicability: All Faculty & Staff
Cross-reference: Adherence to University Policy - Policy 001, Using Temporary Agencies - Policy 112, Short-Term Disability - Policy 404, Paid Time Off (PTO) - Policy 607, Sick Leave Accrued - Policy 612, Sick Leave and STD - Policy 613,  Leave of Absence Without Pay - Policy 616, Occupational Injury or Illness - Policy 714

Policy Manual Disclaimer

Time Off

Exhibit I

**From:** Cheryl Hardy
**Sent:** Friday, October 10, 2025 8:53 PM
**To:** Sophia Lee <slee@law.upenn.edu>; R. Polk Wagner <pwagner@law.upenn.edu>
**Subject:** Filing of Formal Grievance

Dear Sophia and Polk,

Out of respect for you as the Dean of Penn Carey Law and Deputy Dean of Academic Affairs, Polk, whom I have worked with over the past 15 years, I have come to a point where I can no longer comprise myself physically, mentally, and ethically and will be filing a formal complaint with Staff Labor and Relations against:

Claire Wallace, Senior Associate Dean Academic Affairs and Registrar

Christopher Wailoo, Associate Dean, CFO

Angela Cabrera, Director, Human Relations

The level to which Senior administrators are not held accountable for their actions and inactions continues to be par for the course and Senior Administration continues to act or not act with impunity.

My taking this action stems from a formal complaint filed by Hagana Kim against Ned Hawkins. I saw this coming and reached out to both Angela and Claire and both have been MIA. From what I have been told Hagana went to Claire on Monday, 10/6, then went to Chris Wailoo. Chris told Claire that they should loop Polk in, and Claire said No. I was summoned to a meeting on Wednesday, 9/8 at 2:00 p.m. I was not allowed and have not been allowed to see the full complaint, but I was repeatedly told that I needed to respond to four bullet points in the complaint by COB today, Friday, 9/10 without reviewing the complaint in its entirety. I have not done so. I will not be complicit in any actions taken of which I am not completely aware of and will absolutely not file a response to four bullet points that contain inaccuracies taken from what appears to be a four – five-page front and back document. I was told that my refusal to communicate and engage in the discussion would be documented and Angela Cabrera proceeded to write my refusals down on a note pad.

This was a very contentious meeting, and I left the meeting very concerned about my physical health and well-being. I have an autoimmune condition, giant cell arteritis, that requires that I temper my stress level as much as possible. I requested four (4) days sick leave in Workday and requested my treating physician to fill out the required paperwork and to submit the paperwork to the University. It is my hope to return to work on Wednesday.

Other things have also taken place over the past two days which are too much to account for here. This entire situation is being mishandled, and the actions and machinations that are occurring , and the way I am being treated is appalling. I have been crying for the past few days and every time I think about what is happening, I start to cry.

Respectfully submitted,

Cheryl

Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104



# Exhibit J

**From:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Sent:** Sunday, October 12, 2025 7:45 PM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Subject:** Work Remotely - Monday, 10/13

Dear Cheryl,

I am requesting that you work remotely tomorrow, Monday, October 13, given the way in which our meeting with Angela transpired and concluded on Thursday, last week. I will schedule time to meet with you to discuss that meeting, and how we can continue to support LEP, later this week. In the meantime, please let me know when I can expect your responses to the examples from Hagana's complaint. Your input is important for us to be able to evaluate the appropriate action plan.

Thank you and I look forward to talking with you.

All best,

Claire

--

Claire E. Wallace  L'95

Senior Associate Dean, Academic Affairs

Penn Carey Law Registrar

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104

Registrar's Office: reg@law.upenn.edu


Penn Carey Law
UNIVERSITY of PENNSYLVANIA

# Exhibit K

**From:** Cheryl Hardy
**Sent:** Monday, October 13, 2025 7:12 AM
**To:** jrow@upenn.edu <jrow@upenn.edu>; Carrington, Lynnea N <lynnea@upenn.edu>; sstarks@upenn.edu <sstarks@upenn.edu>
**Cc:** oeop@pobox.upenn.edu <oeop@pobox.upenn.edu>
**Subject:** Formal Compliant: Retaliation, Unauthorized FMLA Submission, and Interference With Supervisory Authority

Dear Central HR Executive Director, Office of Staff and Labor Relations at the University of Pennsylvania:

I am submitting this formal complaint to document and request an investigation into retaliatory and unauthorized employment actions taken against me within the University of Pennsylvania Carey Law School.

I am a 1994 alumna of the Law School and have served the Law School for over 15 years as the Associate Dean, Legal Education Programs with an unblemished record of service and leadership. However, recent actions by members of the Law School's Human Resources department and my supervisory team have created a hostile and retaliatory work environment that has caused me significant personal harm and distress.

1. **Unauthorized FMLA submission in contravention of Section 631.5 of the University of Pennsylvania FMLA Policy and Procedure Manual.**

On Friday, October 10, 2025, I received a notice through the University's Workday system from Central FMLA that a 22-day Family and Medical Leave Act (FMLA) request had been submitted and processed on my behalf, overriding a prior request for four (4) sick days that was submitted and approved. I did not initiate, authorize, or consent to this request. This request constitutes a serious violation of federal law, as well as University policy.

When I inquired about this action, I received an email from Angela Cabrera, Law School Executive Director, HR confirming that she – along with unnamed Law School parties – unilaterally and "proactively" decided to submit this request because I had mentioned filing a workplace complaint. Her email states "Given your mention during Thursday's meeting [the meeting was Wednesday, 10/8] of possibly taking leave and filing a complaint, we wanted to ensure you had access to all relevant information and resources. If at any point FMLA becomes applicable, we are here to assist with the process and ensure compliance with University policy."

This action was not only unauthorized but also misrepresented the time I would be out, seemingly intending to remove me from my professional duties, diminish my authority, and retaliate against me for expressing concerns about, harassment, coercion, and management misconduct – ultimately serving to bypass my role as part of a broader scheme.

2. **Retaliatory Reassignment of Supervisory Duties**

Following this unauthorized 22 day-FMLA submission, my Workday supervisory permissions and team management authority were reassigned to my direct supervisor, Claire Wallace and Angela Cabrera, without notice, explanation, or justification. This reassignment immediately affected the administration of my team and facilitated improper actions by Law School HR and Claire Wallace.

Specifically, my staff member ▮▮▮▮▮ had submitted a formal grievance to the Law School HR department. Shortly thereafter, ▮▮▮▮▮ submitted a Workday request for one week's leave of absence. In the comment section of the Workday submission, ▮▮▮▮▮ noted that at the suggestion of Angela Cabrera, ▮ would be taking the following week off – a request that Claire Wallace subsequently approved in Workday once my supervisory permissions had been reassigned following the unauthorized 22-day FMLA trigger.

This sequence of events demonstrates a deliberate circumvention of my supervisory role in and effort to manipulate internal reporting lines during a period of active grievances. The unilateral reassignment of my supervisory authority undermines my professional position, disrupts the established chain of command, and materially interferes with my ability to perform my duties as Associate Dean.

The timing – occurring immediately after I indicated my intent to raise a formal workplace complaint- further evidences a retaliatory motive and suggests a coordinated effort to exclude me from critical oversight responsibilities and decision-making processes related to my team.

3. **Retaliatory Context**

When I raised concerns about misconduct and indicated that I was considering filing a formal complaint, I believe my supervisor and the Law School HR representative took these steps to intimidate and silence me.

4. Formal Complaint and Preservation of Rights

I submit this correspondence as a formal complaint of retaliation, coercion, harassment, and unlawful employment interference. The actions described above - including the unauthorized submission of a 22-day FMLA request, the subsequent reassignment of my supervisory authority, and the circumvention of established reporting lines – constitute serious breaches of University policy and potential violations of federal and state law.

I respectfully request that the University acknowledge receipt of this complaint and provide written confirmation of the next steps and investigative process. I further request that any an all records associated with these actions be preserved in their entirety.

This complaint is submitted in good faith and with a commitment to ensuring a fair, transparent, and lawful resolution consistent with University policy and the protections afforded under the Family and Medical Leave Act (FMLA) and Title VII of the Civil Rights Act of 1964.

Sincerely,

Cheryl Hardy

Cheryl D. Hardy, L'94

Associate Dean, Professional Engagement

& Strategic Initiatives, Legal Education Programs

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104



# Exhibit L

**From:** Claire E. Wallace <cwallac2@law.upenn.edu>
**Sent:** Monday, October 13, 2025 8:54 AM
**To:** Cheryl Hardy <chardy1@law.upenn.edu>
**Subject:** Paid Administrative Leave - effective immediately

Dear Cheryl,

Following recent events and your decision to disregard my request to work remotely today, we have determined that, in light of the nature of your behavior and the concerns raised in our meeting with Angela Cabrera on Thursday, October 9, it is necessary to place you on an immediate leave of absence with pay while we continue to review the matter.

During this period, you will be temporarily relieved of your duties.
You will receive further communication from us outlining the next steps and any additional

information required during this time.

If you have any questions or need further clarification, please reach out to me. We will do our best to keep you updated.

We appreciate your cooperation and understanding during this time.

Best regards,

Claire Wallace

*enviado de mi iphone*

Exhibit M

---------- Forwarded message ---------
From: <myPennMedicineInfo@uphs.upenn.edu>
Date: Tue, Oct 14, 2025 at 9:57 AM
Subject: New letter in myPennMedicine
To: <cnc1233@gmail.com>



Hello Cheryl Hardy ,

You have a new letter in MyChart by myPennMedicine! Please sign in to read your letter.

**Sign In Now**

MyChart by myPennMedicine is available on the go!

 

Page 1 of 2

Name: Cheryl D Hardy | DOB: ▓▓▓ | MRN: ▓▓▓ | PCP: Cindy Iglesias, MD | Legal Name: Cheryl D Hardy

  **Penn Medicine**

Division of Rheumatology
Colin Ligon, MD, MHS

Re: Cheryl Hardy
DOB:

To Whom It May Concern:

Ms. Cheryl Hardy is a patient of mine followed in the Penn Rheumatology Clinic at Valley Forge, last seen 09/10/2025. She is being managed on immunosuppressive medications for an autoimmune condition which has the potential to cause blindness, strokes, and death if left untreated. She is doing well on chronic medication management, but her treatment requires regular in-person evaluations usually once every three months, as well as monitoring lab work also every 3-6 months to monitor disease activity and medication safety. Because her medications weaken her immune system, it is important for her to be able to receive appropriate vaccinations as well. Her disease is under control with treatment, but flares of her immune condition are common and may still occur up to once a month, with flares usually causing headaches, fatigue, and joint pain and swelling, taking usually not more than 3 days to control with additional urgent medication. While this condition tends to improve with treatment extended over a few years, she will warrant medical followup potentially for the rest of her life even if she can be weaned off of medication, as she will remain at risk for returns of disease activity and related autoimmune conditions. Thank you for your understanding in accommodating her health needs.

Sincerely,

Colin Ligon, MD MHS
Adult Rheumatology
Penn Medicine Multispecialty Group

1001 Chesterbrook Blvd | Berwyn | PA | 19312 | 215-316-5151

Exhibit N



**Staff and Labor Relations**

**VI ELECTRONIC MAIL**

December 24, 2025

Cheryl Hardy
7413 Cornerstone Dr
Newtown Square, PA 19073-4557
Email: cnc1233@gmail.com

Dear Cheryl,

The Division of Human Resources, Staff, and Labor Relations has concluded its investigation into your complaint concerning alleged violations of the Family and Medical Leave Act (FMLA) and claims of retaliatory reassignment of supervisory duties involving Claire Wallace, Associate Dean for Academic Affairs and Registrar; Angela Cabrera, Executive Director of Human Resources; and Chris Wailoo, Associate Dean for Finance and Administration and Chief Financial Officer at Penn Carey Law.

Our office conducted a thorough review of the information provided and carefully evaluated the concerns raised. Based on the findings of this review, we determined that the available evidence does not substantiate a violation of University policy.

We would also like to take this opportunity to reaffirm the University's commitment to maintaining a respectful and inclusive environment. The University encourages all community members to raise concerns related to discrimination or retaliation, and we appreciate your willingness to come forward.

Based on our review, this matter was appropriately reviewed, investigated, and addressed, and is now considered closed.

Sincerely,

*Lynnea Carrington*

Lynnea Carrington
Senior Staff and Labor Relations Specialist

CC: Jeff Rowland, Executive Director, Staff and Labor Relations

# Exhibit O

# Staff Grievance Procedure

## 620.1 INTRODUCTION

Regular and effective communication between supervisors and staff members reduces the likelihood of misunderstanding and conflict. The University expects and encourages supervisors and staff members to communicate openly and regularly so that the interests of the staff and the University are best served. To support this commitment, the University has a Workplace Issue Resolution Program (WIRP) and this Grievance Procedure. Resource Offices at the University such as the Division of Human Resources/Staff and Labor Relations, Office of the Ombuds, Equal Opportunity Programs, the African American Resource Center, the Lesbian Gay Bisexual Transgender Center, and the Penn Women's Center will assist staff members in resolving issues or concerns using the WIRP or Grievance Procedure. Staff members who have concerns about the administration of University or departmental policy, are encouraged to try to resolve them by working with their department head or one of the Resource Offices.

The Staff Grievance Procedure is designed to provide a fair and equitable resolution for concerns related to terms or conditions of employment that are not resolved to the staff member's satisfaction through the WIRP or where the dispute may not be addressed through the WIRP. Retaliation against a staff member for utilizing this Grievance Procedure violates University policy and will result in appropriate disciplinary action, up to and including termination. Any staff member who believes that s/he has been retaliated against or treated unfairly for utilizing the Grievance Procedure should contact the Division of Human Resources/Staff and Labor Relations or another University Resource Office.

## 620.2 DEFINITION

A grievance is defined as an unresolved issue concerning the application of University policy, practice, or procedure. This includes disciplinary action, involuntary termination, allegations of discrimination on the basis of race, sex, sexual orientation, gender identity, religion, color, national or ethnic origin, age, disability, or veteran status.

Complaints regarding performance appraisals, flexible work options decisions, reductions in the size of the workforce, restructuring, change in reporting line and/or the designation of individuals for redeployment or separation from a unit are not matters subject to a grievance under this policy.

Complaints regarding compensation and classification are only grievable if a violation of federal, state or local equal opportunity or labor laws is alleged. Other complaints of this nature are handled administratively. Questions regarding the administrative review process should be directed to the Division of Human Resources/Compensation.

## 620.3 ELIGIBILITY

All regular University staff members (including regular limited service staff members) who have completed their introductory period are eligible to utilize this process to resolve issues arising from their employment. Faculty, ungraded administrators, university officers, health system clinicians, non-university employees employed by the University of Pennsylvania Health System and unionized employees have separate procedures and are not eligible to file grievances under this procedure. Residents, occasional or temporary workers are not eligible to file a grievance under this procedure.

## 620.4 PROCEDURE

The Division of Human Resources/Staff and Labor Relations administers the Staff Grievance Procedure. In grievances in which unlawful discrimination is alleged, the Office of Equal Opportunity Programs assists in the administration of the procedure. All time frames and other procedural requirements must be adhered to unless the Division of Human Resources grants an extension or exemption. Extensions will only be granted for compelling reasons. If the grievant fails to respond within specified time frames (including any approved extensions) the grievance may be dismissed. If the respondent fails to respond within specified time frames (including any approved extensions) he/she may be subject to disciplinary action.

Both the grievant and respondent may be assisted throughout this process by an employee representative. These representatives must be regular or retired faculty or staff members. The head of the responding department must approve all employee representatives for respondents.

Staff members must initiate action within the following time frames in order to reserve the right to request a panel hearing under the Staff Grievance Procedure:

- *If not utilizing the WIRP first: The grievant must submit a completed grievance form within thirty (30) working days of the date of the event giving rise to the grievance.*
- *If utilizing the WIRP first: The staff member must initiate action under the WIRP within thirty (30) working days of the date of the event giving rise to the grievance. If no resolution is reached through the WIRP, the staff member then has ten (10) working days from the final attempt to resolve the issue through the WIRP to submit a completed grievance form.*
- *If terminated from employment: The grievant has ten (10) working days from notice of termination of employment to submit a grievance form.*

The completed grievance form must be submitted to the Division of Human Resources/Staff and Labor Relations at 600 Franklin Building, 3451 Walnut Street, Philadelphia, PA 19104-6228.

Every effort will be made to hold the hearing within thirty (30) working days. The Panel must submit recommendations for resolution in writing to the President or designee within five (5) working days of the completion of the hearing. The President or designee will notify the grievant and respondent of the final decision in writing within ten (10) working days of receipt of the recommendations from the panel.

Note: A Grievance Procedure Manual describing the process in detail is available from any of the University Resource Offices or by clicking here.

---

Policy Number: 620
Effective Date: 05/09/2006
Supersedes Policy Number(s): 620 (01/12/1999), 01/01/2000
Applicability: All Regular Staff Members
Cross-reference: Policy 001, Policy 201

Policy Manual Disclaimer

# Exhibit P

---------- Forwarded message ----------
From: **Claire E. Wallace** <cwallac2@law.upenn.edu>
Date: Wed, Jan 28, 2026 at 10:28 AM
Subject: PCL Return to Work Update
To: cnc1233@gmail.com <cnc1233@gmail.com>, Cheryl Hardy <chardy1@law.upenn.edu>
Cc: Angela Cabrera <angelacm@law.upenn.edu>

Dear Cheryl,

I hope the new year finds you well.

I am writing in connection with your current administrative leave with pay, which has been in effect since October 13, 2025.  In addition, as you know from correspondence with the Division of Human Resources, Staff and Labor Relations, the investigation into your allegations of policy violations concluded without substantiating those allegations.

As part of our preparations for your return to work, I am asking that you please prepare and submit a written operations and planning report for 2026.  This is an important exercise which has been required of all the LEP team members.  The document should describe the major planned and anticipated projects for LEP for the remainder of the fiscal year ahead, including key deliverables, milestones, and measures of success.  In addition, it should provide an update on the status of the goals you shared in LEP's annual report for FY26 (submitted June 30, 2025) and that you discussed during LEP's annual meeting with the dean (August 6, 2025) this past summer.   We have taken steps to ensure you have appropriate access to electronic resources for this exercise.

You can login to the LEP SharePoint site with your LawKey credentials.

Please submit this document to me by **Wednesday, February 11**, by emailing it to me at cwallace@law.upenn.edu.

In addition, we have scheduled an in-person meeting with you on **Thursday, February 26, at 1:00 pm**, at which Ms. Carrington will also be present, to discuss your reintroduction to the work environment, your responsibilities, and professional expectations with respect to a respectful and inclusive environment.  As part of that conversation, we will also discuss your conduct during our October 8, 2025, meeting, as well as continue our conversation about concerns raised by colleagues regarding your supervision.

You will remain on paid administrative leave during this period, and I am available as your point of contact should you have any questions.  We look forward to reviewing your operations and planning report.

Sincerely,

Claire

--

Claire E. Wallace  L'95

Senior Associate Dean, Academic Affairs

Penn Carey Law Registrar

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104

Registrar's Office: reg@law.upenn.edu



# Exhibit Q

---------- Forwarded message ---------
From: **Claire E. Wallace** <cwallac2@law.upenn.edu>
Date: Wed, Mar 4, 2026 at 12:54 PM
Subject: Notice of Employment Status
To: cnc1233@gmail.com <cnc1233@gmail.com>, Cheryl Hardy <chardy1@law.upenn.edu>
Cc: Angela Cabrera <angelacm@law.upenn.edu>

Dear Cheryl,

On January 28, 2026, I wrote to you regarding your return to work from your paid administrative leave which commenced October 13, 2025. In my January 28 letter, I asked you to submit by February 11 an operations and planning report for 2026. I also advised you that we had scheduled a meeting at the school with you for February 26. Because you did not submit a report by February 11, I asked you again in an email on February 12 to submit the report.  In that message I reminded you of the February 26 return-to-work meeting. You have not responded to either of my messages, nor did you report to work on February 26.

Under the University's Quit Without Notice Policy (Policy 627), a staff member who is absent for three consecutive workdays without notifying their supervisor is deemed to have voluntarily quit without notice. Because you failed to report to work on February 26 and have not provided any notice regarding your absence, your employment with the University is terminated effective today, Wednesday, March 4; your termination will be recorded as a voluntary termination—quit without notice.

Your final paycheck, including any pay due in accordance with applicable policy, will be processed in the usual manner. Information regarding benefits continuation, including COBRA, will be sent to your address of record. A pre-paid return envelope will be sent to your address on file for the return of all Penn-issued property, including but not limited to your laptop, keys, and identification card. All University property must be returned to the Penn Carey Law's Human Resources department no later than March 31, 2026. You may contact Staff and Labor Relations in the Division of Human Resources to make arrangements to collect any personal belongings in the office.

If you have any questions about this notice, please contact Staff and Labor Relations at 215-898-6098.

Sincerely,


Claire Wallace



--

Claire E. Wallace  L'95

Senior Associate Dean, Academic Affairs

Penn Carey Law Registrar

University of Pennsylvania Carey Law School

3501 Sansom Street, Philadelphia, PA 19104

Registrar's Office: reg@law.upenn.edu

