**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| CHERYL D. HARDY,<br><br>       Plaintiff,<br><br>   v.<br><br>THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, SOPHIA LEE, CHRISTOPHER WAILOO, CLAIRE WALLACE, ANGELA CABRERA, JO-ANN VERRIER, IAN SEMMLER, AND CHRISTINE DROESSER<br><br>       Defendants. | Civil Action No. 2:26-CV-00849-MKC |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**</u>

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   PROCEDURAL BACKGROUND.............................................................. 4

III.  STATEMENT OF FACTS ......................................................................... 4

IV.   LEGAL STANDARD................................................................................ 7

V.    ARGUMENT ............................................................................................. 7

    A.    Hardy Fails to State a Plausible FMLA Claim. ...................................... 7

        1.    Hardy Fails to State a Plausible Claim for FMLA Interference
            Because She Was Not Actually Denied Benefits. ..................................... 7

        2.    Hardy Fails to State a Plausible Claim for FMLA Retaliation
            Because She Did Not Suffer Any Adverse Employment Decision,
            Much Less One Caused by Her Invocation of FMLA Rights. .................. 9

    B.    Hardy Fails to State a Plausible ADA Claim Because She Does Not Allege
        Any Unfair Treatment Because of Her Disability or Any Failure to
        Provide Any Accommodation.................................................................. 12

    C.    Hardy Fails to State a Plausible IIED Claim Because She Does Not Allege
        Any "Extreme and Outrageous" Conduct and Because Her Claim Is
        Barred by Pennsylvania's Workers' Compensation Act. ..................... 14

    D.    Hardy's Claims Against the Individual Defendants Fail. ..................... 16

VI.   CONCLUSION......................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Allen v. Lackawanna Cnty. Bd. of Comm'rs*,
   No. 3:18-cv-00209, 2019 WL 4621276 (M.D. Pa. Aug. 23, 2019), *report and
   recommendation adopted as modified*, 2019 WL 4644244 (M.D. Pa. Sep. 23,
   2019) ...............................................................................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................................7

*Boddie v. Cardone Indus.*,
   Civ. A. No. 20-2179, 2020 WL 5369472 (E.D. Pa. Sep. 8, 2020), *aff'd*, No.
   20-3058, 2021 WL 4814770 (3d Cir. Oct. 15, 2021) ...............................................10

*Britt v. Chestnut Hill Coll.*,
   632 A.2d 557 (Pa. Super. Ct. 1993)..............................................................................14

*Burns v. USI Ins. Servs., LLC*,
   No. 20-cv-05304-JMY, 2022 WL 824101 (E.D. Pa. Mar. 18, 2022)..................................9, 10

*Callison v. City of Phila.*,
   430 F.3d 117 (3d Cir. 2005)............................................................................................8

*Capps v. Mondelez Glob., LLC*,
   847 F.3d 144 (3d Cir. 2017).......................................................................................7, 8

*Clancy-Fisher v. City of Phila.*,
   Civ. A. No. 02-3713, 2002 U.S. Dist. LEXIS 22270 (E.D. Pa. Oct. 30, 2002)........................11

*Clark v. Twp. of Falls*,
   890 F.2d 611 (3d Cir. 1989)..........................................................................................14

*Colwell v. Rite Aid Corp.*,
   602 F.3d 495 (3d Cir. 2010)..........................................................................................10

*Connearney v. Main Line Hosps., Inc.*,
   Civ. A. No. 15-02730, 2015 U.S. Dist. LEXIS 170572 (E.D. Pa. Dec. 22,
   2015) ...............................................................................................................................15

*Connors v. Chrysler Fin. Corp.*,
   160 F.3d 971 (3d Cir. 1998)..........................................................................................10

*Cortazzo v. City of Reading*,
   Civ. A. No. 14-2513, 2015 WL 1380061 (E.D. Pa. Mar. 25, 2015) ........................................8

*Cox v. Keystone Carbon Co.*,
   861 F.2d 390 (3d Cir. 1988) ........................................................................................14

*Datto v. Harrison*,
   664 F. Supp. 2d 472 (E.D. Pa. 2009) ...........................................................................16

*Donnelly v. Cap. Vision Servs., LLC*,
   644 F. Supp. 3d 97 (E.D. Pa. 2022) ............................................................................7, 8

*Emerson v. Thiel Coll.*,
   296 F.3d 184 (3d Cir. 2002) ........................................................................................16

*Gaul v. Lucent Techs.*,
   134 F.3d 576 (3d Cir. 1998) ........................................................................................12

*Gilbert v. Phila. Media Holdings, LLC*,
   564 F. Supp. 2d 429 (E.D. Pa. 2008) ...........................................................................10

*Gunn v. On the Border Acquisitions, LLC*,
   298 F. Supp. 3d 811 (E.D. Pa. 2018) ...........................................................................10

*Hansler v. Lehigh Valley Hosp. Network*,
   798 F.3d 149 (3d Cir. 2015) ..........................................................................................9

*Haybarger v. Lawrence Cnty. Adult Prob. & Parole*,
   667 F.3d 408 (3d Cir. 2012) ........................................................................................18

*Herman v. RSR Sec. Servs.*,
   172 F.3d 132 (2d Cir. 1999) ........................................................................................18

*Holland v. NTP Marble, Inc.*,
   No. 17-cv-2909, 2019 U.S. Dist. LEXIS 78097 (E.D. Pa. May 7, 2019) ..............................15

*Hoy v. Angelone*,
   720 A.2d 745 (Pa. Super. Ct. 1997) ..............................................................................15

*Jones v. SEPTA*,
   No. 12-cv-6582-WY, 2014 WL 3887747 (E.D. Pa. Aug. 6, 2014), *aff'd sub
   nom.*, *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323 (3d Cir. 2015) .......................................9

*Jordan v. Pa. State Univ.*,
   276 A.3d 751 (Pa. Super. Ct. 2022) ..............................................................................14

*Kortyna v. Lafayette Coll.*,
   47 F. Supp. 3d 225 (E.D. Pa. 2014) ..............................................................................16

iii

*Koslow v. Pennsylvania*,
  302 F.3d 161 (3d Cir. 2002)................................................................................16

*Krouse v. Am. Sterilizer Co.*,
  126 F.3d 494 (3d Cir. 1997)................................................................................12

*Lee v. City of Phila.*,
  Civ. A. No. 13-510, 2014 U.S. Dist. LEXIS 24135 (E.D. Pa. Feb. 26, 2014).........................11

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*,
  691 F.3d 294 (3d Cir. 2012).................................................................................9

*Malik v. Wyo. Valley Med. Ctr., P.C.*,
  No. 3:19-CV-01547, 2020 WL 3412692 (M.D. Pa. June 22, 2020).......................................15

*Mandel v. M & Q Packaging Corp.*,
  706 F.3d 157 (3d Cir. 2013)................................................................................10

*Marquis v. Phila. Gas Works*,
  No. 2:25-cv-07005-JDW, 2026 U.S. Dist. LEXIS 51875 (E.D. Pa. Mar. 13,
  2026) (dismissing ADA failure to accommodate claim) .........................................................13

*Matczak v. Frankford Candy & Chocolate Co.*,
  136 F.3d 933 (3d Cir. 1997)................................................................................15

*McCullough v. Wellspan York Hosp.*,
  No. 1:20-CV-979, 2021 WL 711476 (M.D. Pa. Feb. 5, 2021), *report and
  recommendation adopted*, 2021 WL 694800 (M.D. Pa. Feb. 23, 2021) .................................16

*McQuaid v. ACTS Ret. Cmtys. - Southampton Estates*,
  No. 04-3620, 2005 U.S. Dist. LEXIS 18565 (E.D. Pa. Aug. 8, 2005) ...................................16

*Menkowitz v. Pottstown Mem'l Med. Ctr.*,
  Civ. A. No. 97-2669, 1999 WL 410362 (E.D. Pa. June 21, 1999) ........................................19

*Morse v. Lower Merion Sch. Dist.*,
  132 F.3d 902 (3d Cir. 1997)................................................................................18

*Papasan v. Allain*,
  478 U.S. 265 (1986)..........................................................................................18

*Parker v. Chestnut Hill Hosp.*,
  Civ. A. No. 96-1292, 1996 U.S. Dist. LEXIS 8283 (E.D. Pa. June 11, 1996) ........................14

*Riordan v. Kempiners*,
  831 F.2d 690 (7th Cir. 1987) ..............................................................................18

*Ross v. Cont'l Tire of Ams., LLC*,
   Civ. A. No. 12-2631, 2013 WL 1628193 (E.D. Pa. Apr. 16, 2013), *aff'd sub
   nom.*, *Ross v. Gilhuly*, 755 F.3d 185 (3d Cir. 2014) .................................................................11

*Ross v. Gilhuly*,
   755 F.3d 185 (3d Cir. 2014).........................................................................................................8

*Shad v. Delta Air Lines, Inc.*,
   Civ. A. No. 14-5509, 2015 WL 1808696 (E.D. Pa. Apr. 20, 2015) ...................................11, 14

*Shaner v. Synthes (USA)*,
   204 F.3d 494 (3d Cir. 2000)........................................................................................................12

*Vavases v. Cal. Area Sch. Dist.*,
   No. 2:20-cv-404, 2020 WL 5569747 (W.D. Pa. Sep. 17, 2020)................................................15

*Willauer v. Chester Cnty. Intermediate Unit*,
   Civ. A. No. 23-3759, 2025 WL 2377680 (E.D. Pa. Aug. 14, 2025)...........................................14

## Statutes

42 U.S.C.S. § 12111(2).................................................................................................................17

## Other Authorities

77 Pa. Const. Stat. Ann. § 411 .....................................................................................................16

77 Pa. Const. Stat. Ann. § 481(a).................................................................................................15

Fed. R. Civ. P. 8(a)(2)....................................................................................................................7

Fed. R. Civ. P. 12(b)(6)....................................................................................................4, 10, 19

The Trustees of the University of Pennsylvania ("Penn"), together with Sophia Lee, Christopher Wailoo, Claire Wallace, Angela Cabrera, Jo-Ann Verrier, Ian Semmler, and Christine Droesser (collectively, the "Individual Defendants"), respectfully move this Court to dismiss the Amended Complaint of Plaintiff Cheryl D. Hardy (Amended Complaint, ECF No. 23 ("Am. Compl.")) under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), for failure to state a claim upon which relief can be granted.

## I.      INTRODUCTION

Plaintiff Cheryl D. Hardy ("Hardy") worked as an Associate Dean in Penn's law school. Her Amended Complaint asserts three claims: Count I is for violation of the Family and Medical Leave Act ("FMLA"); Count II is for violation of the Americans with Disabilities Act ("ADA"); and Count III is for intentional infliction of emotional distress ("IIED").

Plaintiff's original Complaint contained only two claims, one under the FMLA, and the other alleging IIED. After Defendants moved to dismiss those claims and highlighted their deficiencies, Plaintiff filed an Amended Complaint that did not even *attempt* to address their flaws. Instead, the Amended Complaint adds a claim under the ADA that also fails. There is no reason for this case to proceed further and no basis to allow further amendment. All three claims should be dismissed with prejudice now.

Plaintiff has not plead an FMLA claim. Like the original Complaint, the Amended Complaint affirmatively pleads that Penn offered Hardy *more* FMLA time than she wanted, as if that could somehow amount to an FMLA interference claim. There are no facts plead in the Amended Complaint that establish that she was subjected to any adverse action because of her request for four days of FMLA leave, so her FMLA retaliation claim also fails. In the original Complaint dated February 9, 2026 (Complaint, ECF No. 1 ("Orig. Compl.")), Hardy attempted to

1

excuse her failure to return to work by claiming that Penn "constructively discharged" her while on administrative leave when Penn asked her to submit an operations and planning report for 2026 and *by scheduling a return-to-work meeting.* (Orig. Compl. ¶¶ 58–59, Ex. P.) As Defendants explained in their motion to dismiss the original Complaint (ECF No. 19-1, at pp. 7–8), those factual allegations obviously do not amount to a constructive discharge claim. In the Amended Complaint, Hardy abandons her constructive discharge claim and simply alleges that Penn terminated her employment by email on March 4, 2026. (Am. Compl. ¶ 61, Ex. Q.) But the March 4th email, attached as Exhibit Q to the Amended Complaint, plainly shows that Hardy quit without notice. (*Id.*) Left without any allegation of constructive discharge that could possibly justify a resignation, this issue is even easier to decide. A voluntary resignation is not an adverse employment action.

Hardy's IIED claim cannot meet the extraordinarily high standard that applies to that claim. There are no facts alleged in the Amended Complaint that come close to pleading that anyone at Penn did anything egregious to Hardy that could form the basis of an IIED claim.

The only material difference between the original Complaint and Amended Complaint is Plaintiff's attempt to add a vague ADA claim that purports to encompass discrimination, retaliation, and failure to accommodate without pleading basic facts that establish the elements of any of those claims. Aside from the conclusory allegation that Hardy had a disability within the meaning of the ADA "[b]ecause of her diagnosis of giant cell arteritis," Hardy fails to identify the limitations arising from her diagnosis, or to explain how any accommodation might have enabled her to perform the essential functions of her job. (Am. Compl. ¶ 62.) She also fails to allege that she requested any accommodation for her alleged disability, other than "sick days to prevent a flare up of her autoimmune condition"—which she admits "was approved." (Am. Compl. ¶ 32.)

2

She also does not explain how Penn failed to make a good faith effort to provide reasonable accommodation. And lastly, as with her FMLA retaliation claim, any ADA discrimination or retaliation claim lacks an adverse action, much less one that's causally related to any protected characteristic or activity.

Lastly, Hardy brings claims against Penn, but also the Dean of Penn Carey Law School, and several other members of Penn Carey Law's senior administration team. Even if any claims against Penn survive, Hardy has not alleged enough to keep any individual defendants in this case.

The Amended Complaint should be dismissed for five principal reasons:

*First*, Hardy's FMLA interference claim fails as a matter of law because she has not set forth facts to support a plausible inference that any Defendant denied her FMLA rights.

*Second*, Hardy's FMLA retaliation claim fails as a matter of law because she has not set forth facts to support a plausible inference that she suffered an adverse employment decision, or that any alleged adverse decision was causally related to her invocation of FMLA rights.

*Third*, Hardy's ADA claim fails as a matter of law because she has not set forth facts to support a plausible inference that she suffered any unfair treatment because of her disability, or that Penn failed to make a good faith effort to provide reasonable accommodation.

*Fourth*, Hardy's IIED claim fails as a matter of law because she has not set forth facts to support a plausible inference that any Defendant's conduct rose to the level of outrageousness necessary to provide a basis for recovery, and because her claim is barred by Pennsylvania's Workers' Compensation Act.

*Fifth*, even if Hardy has plead a claim against Penn, she has not done so for any of the seven individual defendants.

Accordingly, Hardy's Amended Complaint should be dismissed in its entirety.

## II.    PROCEDURAL BACKGROUND

Hardy first asserted her FMLA and IIED claims in the original Complaint dated February 9, 2026 (the "Original Complaint," ECF No. 1). Defendants moved to dismiss those claims on April 27, 2026. (ECF No. 19.) Pursuant to Local Rule 7.1(c), Hardy's opposition to that motion was due on May 11, 2026. When the applicable deadline passed, Defendant's motion to dismiss was uncontested.

Two days after the deadline, Hardy filed a motion for extension of time, and did not attempt to show good cause for missing the deadline. (ECF No. 21.) This Court granted that motion (ECF No. 22), and Hardy thereafter filed the Amended Complaint (ECF No. 23), in which she added an ADA claim but made no attempt to cure the deficiencies that Defendants identified in their initial motion to dismiss.

## III.    STATEMENT OF FACTS[1]

Hardy formerly worked at Penn Carey Law as Associate Dean, Legal Education Programs ("LEP"), reporting to Claire Wallace, Senior Associate Dean for Academic Affairs and Registrar. (*See* Am. Compl. ¶¶ 9, 16.) In September 2025, one of Hardy's direct reports submitted an internal complaint against another of Hardy's direct reports and raised some broader concerns about the LEP organization. (*See id.* ¶¶ 18–19.) On October 8, Wallace and Angela Cabrera, Human Resources Director, scheduled a meeting with Hardy to discuss some of the concerns and how best to manage the situation moving forward. (*See id.* ¶¶ 10, 25, Ex. A.) Before the meeting, in four separate emails, Hardy made it abundantly clear that she had no interest in cooperating. (*See id.* ¶ 26, Ex. A, ("If you guys want to handle things that is perfectly fine with me. How you all want [t]o proceed. It is out of my hands…. Is it necessary that I attend the 2pm meeting? You all can

---

[1] Defendants treat Plaintiff's allegations as true for purposes of this motion only. *See* Fed. R. Civ. P. 12(b)(6).

proceed as you see fit…. I really have nothing to say. This is clearly now out of my hands. Again, proceed as you see fit…. I will attend the meeting, but I have nothing to contribute.").) During the meeting, by her own admission, Hardy "refus[ed] to communicate and engage in the discussion," resulting in "a very contentious meeting." (*Id*., Ex. I; *see also id*., Ex. G.)

After the meeting on October 8, Hardy requested four consecutive sick days: Thursday, October 9, through Tuesday, October 14. (*Id*. ¶ 32, Exs. B, D.) Wallace promptly approved her request and noted: "Upon your return, we'll touch base on your input and responses to [your direct report's] complain[t] so that we can partner on drafting an action plan. When you're back in the office, I'd like to also discuss the meeting we had with Angela yesterday, October 8." (*Id*. ¶ 32, Ex. B.) While Hardy was out, some of Hardy's supervisory tasks were delegated to Wallace in Workday, but Hardy retained access to them. (*See id*. ¶¶ 42–44, Ex. E ("Retain Access to Delegated Tasks: Yes").)

Pursuant to Penn's Family and Medical Leave Policy, a period of incapacity lasting more than three consecutive days may constitute a "serious health condition," which is a qualified reason for FMLA leave. (*See* Am. Compl., Ex. H.) Accordingly, Hardy began the process of obtaining a medical certification from her healthcare provider, and Cabrera began the process of requesting FMLA in Workday to *facilitate* Hardy's ability to take FMLA leave through the end of the month, as needed, pending the receipt of a medical certification from her healthcare provider. (*See* Am. Compl. ¶¶ 33, 49, Ex. D.) As Cabrera explained in an email to Hardy: "The request was submitted proactively to ensure your rights under the Family and Medical Leave Act were protected, should the situation have required it. Our intent was to support you and ensure operational continuity— not to make assumptions about your leave duration." (*Id*., Ex. D.) Hardy's central gripe in the Amended Complaint is that Penn initially provided Hardy too much FMLA time, 22-days' worth,

and this supposedly violated Penn's policies in some way that is not explained in a discernible manner in the Amended Complaint. (*See* Am. Compl. ¶¶ 33–39.)

Hardy received system-generated notification emails regarding the supervisory task delegation and FMLA request in Workday. Although those actions were intended to *support* her in taking leave, Hardy wrote many emails complaining about them. (*See id*. ¶¶ 42–44, Exs. D–E.) She then announced her decision to return to work on Monday, October 13, after only two of the four sick days that Wallace had already approved. (*See id*. ¶ 52.) On Sunday, October 12, Wallace asked Hardy to work remotely on Monday, October 13, "given the way in which our meeting with Angela transpired and concluded." (*Id*. ¶ 52, Ex. J.) Wallace also asked when she could expect Hardy's "responses to the examples from [her direct report's] complaint." (*Id*.) When Hardy ignored both instructions, Wallace wrote:

> Following recent events and your decision to disregard my request to work remotely today, we have determined that, in light of the nature of your behavior and the concerns raised in our meeting with Angela Cabrera on [Wednesday, October 8], it is necessary to place you on an immediate leave of absence with pay while we continue to review the matter.

(Am. Compl. ¶ 54, Ex. L.)[2]

On October 13, Hardy submitted a formal complaint against Wallace, Cabrera, and Christopher Wailoo. (*See id*. ¶ 53, Exs. I, K.) On December 24, 2025, after a thorough investigation, Lynnea Carrington, Senior Staff and Labor Relations Specialist, informed Hardy that "the evidence does not substantiate a violation of University policy." (*Id.* ¶ 58, Ex. N.) Ultimately, on January 28, 2026, Wallace wrote to Hardy regarding her return from paid administrative leave. (*See id*. ¶ 59, Ex. P.) She asked Hardy to submit an operations and planning

---

[2] In this October 13 email (*see* Compl., Ex. L), Wallace mistakenly referred to a meeting "on Thursday, October 9," but the meeting to which she was referring took place on Wednesday, October 8. (Compl. ¶¶ 24–32, Ex. A.)

report for 2026 by February 11, 2026, and scheduled a return-to-work meeting for February 26, 2026. Hardy never responded to that email or returned to work. (*See id*. ¶ 61, Ex. Q.)

## IV.    LEGAL STANDARD

FRCP 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere "labels and conclusions" or "a formulaic recitation of a cause of action's elements" are insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. In other words, the plausibility standard requires "more than a sheer *possibility* that a defendant has acted unlawfully." *Id*. at 678 (emphasis added). Conclusory allegations are "not entitled to the assumption of truth." *Id*. at 679.

## V.    ARGUMENT

### A.    Hardy Fails to State a Plausible FMLA Claim.

#### 1.    Hardy Fails to State a Plausible Claim for FMLA Interference Because She Was Not Actually Denied Benefits.

Hardy's FMLA interference claim fails as a matter of law. To state a claim for FMLA interference, Hardy must plead that: "(1) she was an eligible employee under the FMLA; (2) [each Defendant] was an employer subject to the FMLA's requirements; (3) [Hardy] was entitled to FMLA leave; (4) [Hardy] gave notice to [each Defendant] of her intention to take FMLA leave; and (5) [each Defendant] denied [Hardy] benefits to which she was entitled under the FMLA." *Donnelly v. Cap. Vision Servs., LLC*, 644 F. Supp. 3d 97, 109 (E.D. Pa. 2022) (citing *Capps v.*

7

*Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017)). Hardy's FMLA interference claim necessarily fails, because she does not (and cannot) allege that she was actually denied FMLA benefits. Hardy takes issue with Penn initially providing her with too much FMLA leave that she could utilize. (*See* Am. Compl. ¶¶ 33–39.) That obviously cannot amount to an FMLA interference claim.

An interference claim under the FMLA "is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Donnelly*, 644 F. Supp. 3d at 109 (quoting *Callison v. City of Phila.*, 430 F.3d 117, 120 (3d Cir. 2005)). "[F]or an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." *Ross v. Gilhuly*, 755 F.3d 185, 192 (3d Cir. 2014); *accord Capps*, 847 F.3d at 156; *see also Cortazzo v. City of Reading*, Civ. A. No. 14-2513, 2015 WL 1380061, at *6 (E.D. Pa. Mar. 25, 2015) (dismissing interference claim where plaintiff did not allege that FMLA benefits were actually withheld).

Hardy does not plead that Penn withheld any benefits to which she may have been entitled. To the contrary, she concedes that: (1) she requested four consecutive sick days, and her request was promptly approved (Am. Compl. ¶ 32, Ex. B); (2) she ultimately decided to return to work early, after only two sick days (Am. Compl. ¶ 52); and (3) when Penn took affirmative steps to ensure that her FMLA rights were protected, she *objected* to those efforts. (*See* Am. Compl., Ex. D.) The Amended Complaint must allege specific facts showing that Defendants *actually withheld* her right to FMLA benefits, such as by denying a request for leave. In this case, given that Hardy's leave was approved, it is self-evident that no interference occurred. Therefore, she fails to state a plausible claim for FMLA interference.

**2.    Hardy Fails to State a Plausible Claim for FMLA Retaliation Because She Did Not Suffer Any Adverse Employment Decision, Much Less One Caused by Her Invocation of FMLA Rights.**

Hardy's FMLA retaliation claim also fails as a matter of law. To state a claim for retaliation under the FMLA, Hardy must allege: "(1) she invoked her right to leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 158–59 (3d Cir. 2015) (citing *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012)). Hardy's FMLA retaliation claim necessarily fails because she does not (and cannot) allege that she suffered any adverse employment decision.

Hardy was placed on paid administrative leave on October 13, 2025. (*See* Am. Compl., ¶ 54, Ex. L.) Penn expected Hardy to return to work, but she quit without notice. (*See id.* ¶ 61, Ex. Q.) In other words, Penn placed Hardy on paid administrative leave, with no presumption of termination, and Hardy voluntarily resigned—none of which constitutes an adverse employment action. *See Jones v. SEPTA*, No. 12-cv-6582-WY, 2014 WL 3887747, at *3–4 (E.D. Pa. Aug. 6, 2014) (placing an employee on paid administrative leave where there is no presumption of termination is not an adverse employment action), *aff'd sub nom.*, *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323 (3d Cir. 2015). And obviously, voluntary resignation is not an adverse employment action. *See Burns v. USI Ins. Servs., LLC*, No. 20-cv-05304-JMY, 2022 WL 824101, at *5 (E.D. Pa. Mar. 18, 2022) ("Unless there is a claim for constructive discharge an employee's voluntary resignation does not constitute an adverse employment action.") (citation modified).

While Plaintiff's Amended Complaint removes her constructive discharge theory so the Court need not decide the issue, Defendants address it here out of an abundance of caution. In the Original Complaint, Hardy alleged that Wallace "effectively constructively discharged Hardy" by asking her to submit an operations and planning report for 2026 and by scheduling a return-to-

9

work meeting. (Orig. Compl. ¶¶ 58–59.) But a resignation may be deemed a constructive discharge only if a reasonable person would conclude that she has "no choice but to resign." *Burns*, 2022 WL 824101, at *5 ("To establish a constructive discharge, a plaintiff must show the situation surpasses 'the threshold of intolerable conditions.'") (citation modified). "Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign; presumably every resignation occurs because the employee believes that it is in his best interest to resign." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998) (citation modified). Rather, the intolerable threshold "is assessed by the objective standard of whether a reasonable person in the employee's position would have felt *compelled* to resign—that is, whether [she] would have had *no choice* but to resign." *Gilbert v. Phila. Media Holdings, LLC*, 564 F. Supp. 2d 429, 440 n.2 (E.D. Pa. 2008) (citation modified). In assessing whether an employee faced intolerable work conditions, courts consider various factors, "including whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169–70 (3d Cir. 2013) (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503 (3d Cir. 2010)). This case involves no such allegations. Accordingly, Hardy's FMLA retaliation claim lacks the essential element of being subjected to an adverse action and must be dismissed.[3]

---

[3] Courts routinely dismiss implausible claims that rely on a constructive discharge theory on a motion under Rule 12(b)(6). *See, e.g.*, *Boddie v. Cardone Indus.*, Civ. A. No. 20-2179, 2020 WL 5369472, at *6 (E.D. Pa. Sep. 8, 2020) (dismissing constructive discharge claim; "[G]iven Plaintiff's brief tenure and her resigning even before Cardone had even completed its efforts to address her concerns, the facts pleaded cannot be said to rise to the level of constructive discharge."), *aff'd*, No. 20-3058, 2021 WL 4814770 (3d Cir. Oct. 15, 2021); *Gunn v. On the Border Acquisitions, LLC*, 298 F. Supp. 3d 811, 824 (E.D. Pa. 2018) (dismissing constructive discharge

Even assuming Hardy suffered an adverse employment action, it was not causally related to any invocation of FMLA rights. "To demonstrate causation in an FMLA retaliation action, the employee must point to evidence sufficient to create an inference that a causal link exists between the FMLA leave and the adverse employment action." *Ross v. Cont'l Tire of Ams., LLC*, Civ. A. No. 12-2631, 2013 WL 1628193, at *6 (E.D. Pa. Apr. 16, 2013), *aff'd sub nom.*, *Ross v. Gilhuly*, 755 F.3d 185 (3d Cir. 2014) (citations omitted). Here, given that Hardy decided to return to work early, after only two sick days (*see* Am. Compl. ¶ 52), and *objected* to Penn's efforts to ensure that her FMLA rights were protected (*see* Am. Compl., Ex. D), Hardy cannot show that she invoked her right to FMLA leave—if anything, she *objected* to being provided the opportunity to take too much FMLA leave. Moreover, any invocation of FMLA rights occurred after the actual cause of any adverse employment action, which she alleges was the "very contentious" meeting on October 8, 2025, with Wallace and Cabrera, in which she admittedly "refus[ed] to communicate and engage

---

claim where "Plaintiff's generalized statements of possible future discipline and reduced pay [did] not amount to a constructive discharge [because] [t]here [was] no evidence that plaintiff was threatened with dismissal or that she was subject to disciplinary charges or a poor work evaluation."); *Shad v. Delta Air Lines, Inc.*, Civ. A. No. 14-5509, 2015 WL 1808696, at *7 (E.D. Pa. Apr. 20, 2015) ("[The plaintiff] complained she was regularly subjected to insulting and derogatory comments and conduct that constituted discriminatory conditions that a reasonable person would have found intolerable. This allegation, unsupported by any further detail, is nothing more than a bare recitation of the elements of her claim and stops well short of describing an entitlement to relief. Her other allegations (that her supervisor threatened her with discipline on a single occasion and that she trained an employee who thereupon replaced her) do not constitute work conditions so intolerable that a reasonable person subject to them would resign. [She] has failed to plead constructive discharge."); *Lee v. City of Phila.*, Civ. A. No. 13-510, 2014 U.S. Dist. LEXIS 24135, at *13 (E.D. Pa. Feb. 26, 2014) (dismissing constructive discharge claim where amended complaint was void of any facts related to plaintiff's working conditions and apparent resignation and did not even plead that plaintiff resigned.); *Clancy-Fisher v. City of Phila.*, Civ. A. No. 02-3713, 2002 U.S. Dist. LEXIS 22270, at *10 (E.D. Pa. Oct. 30, 2002) (dismissing constructive discharge claim where plaintiff only alleged that "defendants would not allow her to discipline a 'problem' employee and rejected her requests that they take corrective action against the employee[,] because "[t]his [was] not conduct that would have the 'foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in plaintiff's shoes would resign.'") (citation modified).

11

in the discussion." (Am. Compl., Ex. I; *see also id.*, Ex. L (showing that the decision to place Hardy on paid administrative leave in part was based on her "behavior and the concerns raised in our meeting").) Hardy alleges no facts to suggest that any alleged adverse action was casually related to her alleged invocation of FMLA rights. Accordingly, she fails to state a plausible claim for FMLA retaliation.

> **B.**     **Hardy Fails to State a Plausible ADA Claim Because She Does Not Allege Any Unfair Treatment Because of Her Disability or Any Failure to Provide Any Accommodation.**

Hardy's ADA claim should be dismissed. "In order to establish a prima facie case of disparate treatment [or discrimination] under the ADA, a plaintiff must show '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination'" (i.e., because of disability or perceived disability). *Shaner v. Synthes (USA)*, 204 F.3d 494, 500 (3d Cir. 2000) (quoting *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998)) (affirming dismissal of ADA claim). "To establish a prima facie case of retaliation under the ADA, a plaintiff must show '(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Id.* (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). Hardy has established none of these elements.

Aside from the conclusory allegation that Hardy had a disability within the meaning of the ADA "[b]ecause of her diagnosis of giant cell arteritis," Hardy fails to identify the limitations arising from her diagnosis, or to explain how any accommodation might enable her to perform the essential functions of her job. (Am. Compl. ¶ 62.) Other than describing herself as "a qualified individual with a disability" in one instance, Hardy fails to plead facts that establish her ability to

perform the essential functions of her job with or without reasonable accommodation. (Am. Compl. ¶ 76.) Moreover, as discussed with respect to her FMLA claim (*see supra* Part A.2), Hardy fails to allege that she suffered any adverse employment action, much less one caused by any disability, perceived disability, or protected activity.

Hardy's ADA claim fares no better under a failure to accommodate theory. "To state a claim for failure to accommodate, a plaintiff must allege sufficient facts to support a reasonable inference that (a) she was disabled and her employer knew it; (b) she requested an accommodation or assistance; (c) her employer did not make a good faith effort to assist, and (d) the employer could reasonably have accommodated her." *Marquis v. Phila. Gas Works*, No. 2:25-cv-07005-JDW, 2026 U.S. Dist. LEXIS 51875, at *4–5 (E.D. Pa. Mar. 13, 2026) (dismissing ADA failure to accommodate claim). Here, Hardy fails to allege that she requested any accommodation for her alleged disability, other than "sick days to prevent a flare up of her autoimmune condition"—which she admits "was approved." (Am. Compl. ¶ 32.) She does not allege that Penn denied any requested accommodation or failed to make a good-faith effort to provide a reasonable accommodation. Her ADA claim is not supported by any material factual allegations. This Court has dismissed ADA claims under similar circumstances. *See, e.g.*, *Marquis*, 2026 U.S. Dist. LEXIS 51875, at *5 ("[Plaintiff] has not alleged anything about her job functions, what accommodation she requested, how she could have performed those functions either with or without an accommodation, whether the accommodation was reasonable, and whether [the employer] failed to accommodate her or engage in an interactive process to determine if it could accommodate her. Those failures doom her claim.").

**C.**     **Hardy Fails to State a Plausible IIED Claim Because She Does Not Allege Any "Extreme and Outrageous" Conduct and Because Her Claim Is Barred by Pennsylvania's Workers' Compensation Act.**

Hardy's claim for IIED should also be dismissed. To establish an IIED claim, Hardy must show that: (1) "the conduct was extreme and outrageous;" (2) that "the conduct was intentional or reckless;" (3) that the conduct "caused emotional distress;" and (4) that the emotional distress was "severe." *Willauer v. Chester Cnty. Intermediate Unit*, Civ. A. No. 23-3759, 2025 WL 2377680, at *12 (E.D. Pa. Aug. 14, 2025) (citing *Jordan v. Pa. State Univ.*, 276 A.3d 751, 775 (Pa. Super. Ct. 2022)). "Under Pennsylvania law, the bar to show IIED is high." *Shad*, 2015 WL 1808696, at *14. IIED claims are only appropriate in egregious cases. *Willauer*, 2025 WL 2377680, at *12. It is a claim that is generally recognized only in the most egregious cases, such as mishandling a corpse or reckless diagnosis of a fatal disease. *Britt v. Chestnut Hill Coll.*, 632 A.2d 557, 561 (Pa. Super. Ct. 1993). The Third Circuit has noted that it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for [IIED]." *Clark v. Twp. of Falls*, 890 F.2d 611, 623 (3d Cir. 1989).

Hardy's case certainly does not constitute the "extremely rare" employment case that "rise[s] to the level of outrageousness" necessary to support a IIED claim. *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988). To state such a claim, she must allege that the Defendants engaged in conduct that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. Hardy's case, in which Penn granted her request for four days off and attempted to support her in taking additional leave if needed, before she objected and quit without notice, falls woefully short of that standard. *See id.* (rejecting an IIED claim where an employer fired an employee on the day he returned from a "triple by-pass surgery," knowing "his physical and emotional recuperation were not complete"); *Parker v. Chestnut Hill Hosp.*, Civ. A. No. 96-1292,

14

1996 U.S. Dist. LEXIS 8283, at *7 (E.D. Pa. June 11, 1996) (explaining that, as a matter of law, allegations that employee was discharged because of a FMLA request did not amount to extreme and outrageous conduct necessary to state an IIED claim).

Here, aside from conclusory allegations that "Defendants acted and failed to act willfully, maliciously, intentionally, and with reckless disregard for Hardy's rights," (Am. Compl. ¶ 66), and that their unspecified conduct "was extreme and outrageous, intentional or reckless, and caused Hardy severe emotional distress," (Am. Compl. ¶ 80), the Amended Complaint is devoid of *any* factual assertions that *anyone* engaged in such conduct. Courts routinely dismiss IIED claims under similar circumstances. *See, e.g.*, *Connearney v. Main Line Hosps., Inc.*, Civ. A. No. 15-02730, 2015 U.S. Dist. LEXIS 170572, at *22 (E.D. Pa. Dec. 22, 2015) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. Super. Ct. 1997) (dismissing IIED claim because plaintiff's complaint "fail[ed] to allege 'the most clearly desperate and ultra extreme conduct' required to support an IIED claim under Pennsylvania law"); *see e.g.*, *Malik v. Wyo. Valley Med. Ctr., P.C.*, No. 3:19-CV-01547, 2020 WL 3412692, at *10 (M.D. Pa. June 22, 2020); *Vavases v. Cal. Area Sch. Dist.*, No. 2:20-cv-404, 2020 WL 5569747, at *5 (W.D. Pa. Sep. 17, 2020); *Allen v. Lackawanna Cnty. Bd. of Comm'rs*, No. 3:18-cv-00209, 2019 WL 4621276, at *19 (M.D. Pa. Aug. 23, 2019), *report and recommendation adopted as modified*, 2019 WL 4644244 (M.D. Pa. Sep. 23, 2019) (same).

Lastly, even assuming Hardy could plausibly assert an IIED claim (which she cannot), such a claim is based on work-related stress and thus is barred by Pennsylvania's Workers' Compensation Act. It is well settled in Pennsylvania that workers' compensation provides the sole remedy for injuries allegedly sustained during the course of employment. *See Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997) (citing 77 Pa. Const. Stat. Ann. § 481(a)); *Holland v. NTP Marble, Inc.*, No. 17-cv-2909, 2019 U.S. Dist. LEXIS 78097, at

15

*29 (E.D. Pa. May 7, 2019). The exclusivity provision in that statute completely bars IIED claims arising out of an employment relationship, except where "a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment." 77 Pa. Const. Stat. Ann. § 411. This carve-out is known as the "personal animus" exception and is typically available only in limited circumstances. *See Kortyna v. Lafayette Coll.*, 47 F. Supp. 3d 225, 244 (E.D. Pa. 2014) (dismissing IIED claim as barred by Pennsylvania's Workers Compensation Act because plaintiff failed to allege any factual allegations to support the personal animus exception); *see also McCullough v. Wellspan York Hosp.*, No. 1:20-CV-979, 2021 WL 711476, at *4–5 (M.D. Pa. Feb. 5, 2021), *report and recommendation adopted*, 2021 WL 694800 (M.D. Pa. Feb. 23, 2021) (same). Hardy's Amended Complaint alleges no facts that would cause her claim to fall within the personal animus exception, and it should therefore be dismissed.

### D.      Hardy's Claims Against the Individual Defendants Fail.

Even if claims against Penn survive, Hardy's Amended Complaint fails to adequately plead an ADA, FMLA, or IIED claim against any of the individual defendants.

To start with, the ADA does not permit individual liability. *See Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) ("[T]here appears to be no individual liability for damages under Title I of the ADA."); *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) ("[I]ndividuals are not liable under Titles I and II of the ADA, which prohibit discrimination by employers and public entities respectively."); *Datto v. Harrison*, 664 F. Supp. 2d 472, 487–88 (E.D. Pa. 2009) ("[I]ndividual liability is not available for discrimination [or failure-to-accommodate] claims brought under Title I or Title II of the ADA…. In cases involving retaliation for the exercise of rights under Title I, involving employment, courts have uniformly found that individual liability is not available."); *McQuaid v. ACTS Ret. Cmtys. - Southampton Estates*, No. 04-3620, 2005 U.S.

16

Dist. LEXIS 18565, at *6 (E.D. Pa. Aug. 8, 2005) ("[T]he consensus view in this judicial district appears to be that there is no individual liability under the ADA."); *see also* 42 U.S.C.S. § 12111(2) (defining "covered entity" to mean "an employer, employment agency, labor organization, or joint labor-management committee"). Hardy's ADA claim against the Individual Defendants must fail.

The Amended Complaint scarcely mentions Sophia Lee, Dean of Penn Carey Law, Christopher Wailoo, Associate Dean for Finance and Administration and CFO, Ian Semmler, the Director of Fiscal Operations, Jo-Ann Verrier, the former Vice Dean for Administrative Services, and Christine Droesser, Associate Dean and Chief Information Officer. With respect to these individual defendants, Hardy merely alleges:

- Hardy informed Sophia Lee that "she intended to file an internal complaint against Wallace, Cabrera, and Wailoo," "she would be taking four (4) days off to temper her stress due to her medical condition, that she could not stop crying when thinking about what Wallace, Cabrera, and others were doing to her, and that she would return to work on October 15, 2025[,]" and that Lee took no action to address Hardy's situation or concerns (*see* Am. Compl. ¶ 51);

- When Jo-Ann Verrier was Hardy's prior manager, she "consistently circumvented" the termination of one of Hardy's direct reports and told Hardy to "lean into what [her direct report] could do best and the department would be given another full-time employee[,]" and that Wallace "stated the confidential information [about Hardy's direct report] was told to her by Verrier" (*see id*. ¶¶ 29–30); and

- Ian Semmler and Christine Droesser approved the delegation of Workday tasks (*see id*. ¶ 36).

Defendants noted the lack of factual allegations regarding these individuals in their motion to dismiss the original Complaint (ECF No. 19-1, at pp. 12–13), but Hardy did not add any allegations about them in the Amended Complaint.

The FMLA permits individual liability against a supervisor, but only "when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest." *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012) (quoting *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987)). "In analyzing an individual supervisor's control over the employee under… the FMLA, most courts look to the 'economic reality' of the employment situation, examining whether the individual supervisor carried out the functions of an employer with respect to the employee." *Id*. at 417–18 (collecting cases). Relevant factors include: "whether the individual '(1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id*. at 418 (quoting *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999)). None of these allegations show that these individuals had any supervisory authority over Hardy or were responsible for any alleged FMLA violation, as is required in this Circuit. *See Haybarger*, 667 F.3d at 417.

Hardy's general allegations that "defendants are employers subject to the FMLA's requirements, [and] Hardy gave notice to defendants of her intention to take FMLA leave" do not help her. (Am. Compl. ¶ 71.) These amount to nothing more than a "legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Third Circuit is clear: a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Indeed,

18

individual defendants cannot be swept in by association with Penn or by generalized allegations concerning them as a group. *See Menkowitz v. Pottstown Mem'l Med. Ctr.*, Civ. A. No. 97-2669, 1999 WL 410362, at *3 (E.D. Pa. June 21, 1999).

Finally, with respect to the IIED claim, Hardy does not allege conduct by Lee, Wailoo, Semmler, Verrier, or Droesser that is extreme and outrageous. (*See supra* Part IV.C.) The IIED claim against them must be dismissed.

As to Claire Wallace and Angela Cabrera, the Amended Complaint fails to allege that either played a role in retaliating against Hardy for taking FMLA leave or interfering with her ability to do so. To the contrary, Hardy alleges that they were involved in some type of conspiracy to give her the ability to take too much FMLA time. (Am. Compl. ¶¶ 32–39.) And again, as to Hardy's IIED claim, no conduct is attributed to Wallace or Cabrera that could objectively be considered extreme and outrageous, so that claim against them fails.

## VI.    **CONCLUSION**

For the foregoing reasons, all of Hardy's claims against the Defendants fail as a matter of law. As a result, Defendants respectfully request that this Court grant Defendants' motion and dismiss Hardy's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice.

Dated: June 3, 2026                         Respectfully submitted,

By: _____
Jeffrey A. Sturgeon
PAUL HASTINGS LLP
1650 Market Street
Philadelphia, PA 19103
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
jeffreysturgeon@paulhastings.com

19

Elizabeth Neuburger*
PAUL HASTINGS LLP
200 Park Avenue
New York, New York
Tel: (212) 318-6000
elizabethneuburger@paulhastings.com

*Counsel for Defendants*
*Admitted pro hac vice

20