## United States District Court for the Eastern District of Pennsylvania

Cheryl D. Hardy                                    :
                                                   :
              vs                                   :          Civil Action No. 26-849
                                                   :
The Trustees of the University of                  :
Pennsylvania, et al.                               :

### Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint

Plaintiff, Cheryl D. Hardy, by and through her attorney, hereby submits this Memorandum in opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

### I.    Introduction

In this case, Plaintiff, Cheryl D. Hardy, a former employee of the University of Pennsylvania, alleges defendants violated her rights under state common law, the Family and Medical Leave Act (the "FMLA"), and the Americans with Disabilities Act (the "ADA") in connection with her employment and termination. This case was commenced by the filing of a Complaint on February 9, 2025. The Complaint contained two claims: one under the FMLA and one alleging a claim of Intentional Infliction of Emotional Distress ("IIED"). In response to Defendants' Motion to Dismiss the Complaint, and because she had received a Notice of Right to Sue (NRTS) from the U.S. Equal Employment Opportunity Commission (EEOC) for her Charge of Discrimination containing a claim under the ADA, rather than answer Defendants' Motion to Dismiss the Complaint, on May 20, 2026, Hardy filed the Amended Complaint.[1] The Amended

---

[1] As she stated in the Motion she filed prior to filing the Amended Complaint, Hardy contended then, and contends now, that defendants' arguments in support of dismissal of her FMLA and IIED claims are without merit. She asserted in the Motion that enlarging the time for her to answer or respond to Defendants' Motion to Dismiss the Complaint so that she could file an amended complaint containing

Complaint contains claims of retaliation and interference with her rights under the FMLA, discrimination and retaliation under the ADA, and IIED.

On June 3, 2026, defendants moved to dismiss the Amended Complaint with prejudice in its entirety. Defendants assert five reasons "as a matter of law" for dismissing the Amended Complaint. However, as discussed herein, none of the reasons asserted by defendants have any merit as a matter of law or fact. Moreover, all of the reasons asserted by defendants cannot be decided in response to a motion to dismiss because their validity is dependent upon facts which Hardy is entitled to obtain through discovery. Rather, all of defendants' arguments are more suited for a motion for summary judgment, should they choose to file one.

Accordingly, for the reasons set forth herein, the Court should deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint in its entirety. In the alternative, Hardy requests leave to file an amended pleading to address any factual deficiencies the Court might believe exist in the Amended Complaint with respect to any of her claims.

## II.   Background Facts

By way of background facts, Hardy incorporates herein by reference the allegations of paragraphs 5-66, inclusive, of the Amended Complaint. Hardy asserts that the following additional facts add context to the allegations of the Amended Complaint and, to the extent the Court believes appropriate, can be included in an amended pleading.

With respect to the October 8 meeting described in the Amended Complaint, during a Teams meeting that day at 10:00 a.m., Cabrera told Hardy that Cabrera would not be discussing

---

an additional claim against the defendants under the ADA would further judicial efficiency and economy because the Court could then decide all of the relevant issues at once.

Hardy's subordinate's complaint, and that Wallace was not authorized to discuss what the subordinate had said to Cabrera and Wallace.

While Hardy was out on the approved four-day leave, she did not retain access to any of her supervisory tasks, but rather, all of her responsibilities were delegated to both Wallace and Cabrera. This was an unauthorized delegation in contravention of Penn's policies and procedures, because only if required and requested by Hardy could her duties also have been delegated to Cabrera. Under Penn's policy, Hardy's duties could only have been delegated to Wallace or an employee at a level higher than Wallace. Hardy was not incapacitated during the four-day leave. Moreover, Penn's FMLA policy does not automatically declare an employee as "incapacitated" for taking three or more sick days.

Hardy did not require any assistance or facilitation from Cabrera in order to obtain the required medical certification related to her FMLA leave. Hardy requested the number of days she needed, completed the necessary forms, obtained the medical certification from her physician, and her request was granted. (*See* Exhibit A attached hereto and made a part hereof). Cabrera had no authority to take any action on Hardy's behalf with respect to Hardy's FMLA request. Under Penn's policy, only a manager, not a human resources representative, is authorized to submit a FMLA request on behalf of an employee, and then only if the employee is incapacitated and the employee or a representative of the employee requests that the manager/supervisor submit the request. The attached Exhibit B, a screenshot from Workday, shows Hardy's FMLA request submitted for four days, and the unauthorized request for FMLA for Hardy for 22 days submitted by Cabrera.

The actions of Cabrera, Wallace and others were not intended to support Hardy. She requested the number of sick days she needed to manage her condition, and appropriately

3

obtained medical certification to support the request. At Penn, FMLA days are capped and unpaid. FMLA runs concurrently with sick days, which allows an employee to be paid for up to 24 days if the employee has that amount of sick time available. At this same time, Hardy's physician submitted a request for authorization for Hardy to use three days of intermittent leave over a 12-month period, subject to renewal. Penn's Central Human Resources office approved Hardy's request for intermittent FMLA leave the same day it approved her request for four days of FMLA leave. (*See* Exhibit C attached hereto and made a part hereof). The 22-day FMLA request submitted by Cabrera and Wallace, without proper medical certification, used up all but 2 of Hardy's 24 paid sick days, thereby directly interfering with the ability of Hardy and her medical professionals to manage her condition.

It is important to point out that Wallace placed Hardy on administrative leave on October 13, almost two (2) hours after Hardy filed her formal complaint against Wallace, Cabrera, and Wailoo. (*See* Am. Cmplt. §§ 53 and 54, Exs. K and L).

After Hardy submitted her formal complaint on October 13, despite being told by Carrington on October 20 that Carrington would investigate her complaint, no one from Penn interviewed Hardy about her complaint, requested any documentation from her, afforded her the opportunity to respond to what any alleged witnesses may have stated in connection to the complaint, or otherwise contacted her related to the complaint until December 24, when Carrington emailed a holiday present to Hardy that her alleged investigation did not substantiate any violation of Penn policy. (*See id.* §§ 57 and 58). Penn never provided to Hardy a report of the alleged investigation of her complaint.

### III.    Argument

#### A.    The Motion to Dismiss Legal Standard.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "[S]tating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required elements of a claim. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements. *Id.* "[T]he *Twombly-Iqbal* duo have *not* inaugurated an era of evidentiary pleading." *Santana v. Cook Cnty. Bd. of Review*, 270 F.R.D. 388, 390 (N.D.Ill. 2010) (emphasis in original). Nor do "factual allegations ... become impermissible labels and conclusions simply because the additional factual allegations explaining and supporting the articulated factual allegations are not also included." *In re Niaspan Antitrust Litig.*, 42 F.Supp.3d 735, 753 (E.D. Pa. 2014) (internal quotation marks omitted). Although Plaintiffs might ultimately falter in meeting their burden of proof, the collection of evidence is the object of discovery. *Hassan v. City of New York*, 804 F.3d 277, 296 (3d Cir. 2015).

#### B.    The FMLA Interference Legal Standard

To state a *prima facie* claim for FMLA interference, a plaintiff must plead that 1) she was an eligible employee under the FMLA, 2) each defendant was an employer subject to the requirements of the FMLA, 3) that she was entitled to FMLA leave, 4) that she gave notice to each employer of her intention to take FMLA leave, and 5) each employer denied her benefits to

which she was entitled under the FMLA. *See Donnelly v. Cap. Vision Servs., LLC*, 644 F. Supp. 3d 97, 109 (E.D. Pa. 2022). "An individual supervisor working for an employer may be liable as an employer under the FMLA." *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 415 (3d Cir. 2012).

### 1.    Hardy has stated a claim of FMLA interference.

Defendants apparently concede that Hardy has sufficiently alleged the first four required elements of a prima facie case of FMLA interference. Their sole contention is that she has not pleaded the fifth required element – that defendants denied her benefits to which she was entitled. Defendants cite to Exhibit D of the Amended Complaint to support its contention that Hardy did not sufficiently plead the fifth required element because "when Penn took affirmative steps to ensure that her FMLA rights were protected, she objected to those efforts." (*See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint for Failure to State a Claim ("Defendants' Memorandum") at 8). Defendants' reliance on Exhibit D to support its position is seriously misplaced, because Exhibit D and the related allegations in the Amended Complaint, far from showing that defendants acted to protect Hardy's FMLA rights, instead paint a picture of defendants' efforts to interfere with and restrain her FMLA rights.

Preliminarily, it is important to note that under the FMLA, an employer may not "interfere with, restrain, or deny" an employee from exercising the rights guaranteed to them under the FMLA. (*See* 29 U.S.C. § 2615(a)(1) and 29 CFR § 825.220). The Merriam-Webster online dictionary defines the term "interference" to mean, "to enter into or take part in the concerns of other, or to interpose in a way that hinders or impedes: come into collision or be in opposition. FMLA interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." (*See* 29 CFR § 825.220(b)). The Merriam-

6

Webster online dictionary defines the term "restrain" to mean, "to prevent from doing, exhibiting, or expressing something, or to limit, restrict, or keep under control." Under these definitions of the terms "interfere" and "restrain," it is clear that Hardy has sufficiently alleged an FMLA interference claim.

The allegations of the Amended Complaint establish that Hardy requested four (4) days of FMLA leave, submitted the required documents, including a medical certification from her physician, and that Penn's Central Human Resources office approved that request. That same day, Penn's Central Human Resources office approved her request for intermittent FMLA leave, a request that was also supported by an appropriate medical certification.[2] She further alleged in the Amended Complaint that because she did not provide comments on a response to a subordinate's complaint that defendants never gave her an opportunity to review, and in response to her statement to Cabrera and Wallace that she intended to file a formal complaint against them with Penn's Human Resources office, Cabrera, Wallace, and perhaps others, without Hardy's authorization or request, and without any supporting medical documentation, submitted a request for 22 days of FMLA leave for Hardy. At Penn, FMLA days are capped and unpaid, and run concurrently with any paid sick days the employee might have, which are also capped at 24. The actions of Cabrera and Wallace interfered with, restrained and denied Hardy the ability to manage her health condition and utilizing her FMLA leave in the manner she and her medical providers deemed, and prospectively might deem, appropriate.

Defendants' contention that Hardy received all of her FMLA benefits is simply wrong. The allegations of the Amended Complaint and the inferences that arise from them, which must be construed in her favor, indicate that she was not accorded her full FMLA benefits, including

---

[2] Hardy can allege these facts in an amended pleading.

her right to use those benefits in the manner that she and her medical providers determined was, and in the future might be, necessary for her to manage her health condition.

In sum, the actions of defendants described above in submitting and processing an unauthorized request on Hardy's behalf, without her request or authorization, in violation of Penn's FMLA policy, and without appropriate medical certification, for 22 days of FMLA leave, for defendants' own nefarious reasons, under circumstances where Hardy had a finite number of FMLA and sick days available to her, clearly constituted interference with and restraint of her FMLA rights because defendants effectively unilaterally denied Hardy and her physician the right and opportunity to manage her health condition by utilizing her available FMLA leave in a manner that she and her physician deemed, or in the future might deem, necessary.

Accordingly, the Court should deny Defendants' Motion to Dismiss Hardy's FMLA interference claim. In the alternative, based on the discussion above, Hardy requests leave to file an amended pleading to allege any further facts the Court believes are necessary to state a claim for FMLA interference.

## C.    The FMLA Retaliation Legal Standard

To state a *prima facie* claim for FMLA retaliation, a plaintiff must show: (1) [that she engaged in] protected employee activity by invoking her right to FMLA-qualifying leave; (2) that she suffered an adverse action by the employer either after or contemporaneous with her protected activity; and (3) that there was a causal connection between her protected activity and the employer's adverse action. See *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 302 (3d Cir. 2012).

Verbal complaints to management are sufficient to constitute protected activity. *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001).

8

Opposition to unlawful discrimination need not be significant or formal. The Third Circuit has directed courts to focus on the "message being conveyed rather than the means of conveyance." *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006); *see also Crawford v. Metropolitan Government of Nashville & Davidson County*, 555 U.S. 271, 277 (2009) (observing that the term "opposition" may be used in reference to "someone who has taken no action at all to advance a position beyond disclosing it").

A causal connection between the protected activity and the adverse employment action can be shown where "the temporal proximity between the protected activity and the adverse action is unusually suggestive." *LeBron v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). Where the temporal proximity is not unusually suggestive, "we consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Daniels*, 776 F.3d at 196.

### 1.    Hardy has stated a claim of FMLA retaliation.

Defendants contend that Hardy's FMLA retaliation claim should be dismissed because she did not, and cannot, allege that she suffered any adverse employment decision. The Court should reject this argument outright because Hardy expressly alleged in the Amended Complaint that she was terminated, *see* Am. Cmplt. ¶ 61, which is the quintessential adverse employment action. Putting this obvious flaw in defendants' position to one side, their arguments for dismissal of the FMLA retaliation claim rest on three contentions, none of which are correct and all of which are so fact-dependent that it is not appropriate for the Court to resolve them at this stage of this litigation – discovery on each of those contentions is necessary.

First, defendants contend, as a matter of fact, that Hardy was placed on paid administrative leave with "no presumption of termination." Following from that contention, they argue, that as a matter of law, citing *Jones v. SEPTA*, No. 12-cv-6582-WY, 2014 WL 3887747 at *3-4 (E.D. Pa. Aug. 6, 2014), *aff'd sub nom., Jones v. SEPTA*, 796 F.3d 323 (3d Cir. 2015), an employer placing an employee on paid administrative leave does not constitute an adverse employment action. (*See* Defendant's Memorandum at 9). Neither premise is correct. As to the contention that Hardy was placed on paid administrative leave with no presumption of termination, the facts alleged in the Amended Complaint, taken as a whole, indicate that as Hardy suggests, Wallace's action of placing her on paid administrative leave was merely a prelude to her termination. Hardy's position is supported by the fact that when she was placed on administrative leave, she was relieved of her duties and denied access to her email account, Workday and MS365. Those are the actions of a supervisor intent on terminating a subordinate, not a supervisor who merely wanted to give a subordinate a paid unscheduled indefinite vacation. Consequently, discovery is necessary to fully explore defendants' contention that Wallace did not intend to terminate Hardy when she placed her on paid administrative leave.

Relatedly, defendants' reliance on *Jones* is misplaced. Not surprisingly, defendants omit a key limitation of the holding in Jones. In *Jones*, the Third Circuit held that "[a] paid suspension ***pending an investigation of an employee's alleged wrongdoing*** does not fall under any of the forms of adverse action...". *Id.* at 367 (emphasis supplied). In fact, all of the cases cited by the *Jones* Court in support of its holding involved employees being put on paid administrative leave pending an investigation of the employee. *Id.* Here, defendants were not investigating any alleged wrongdoing on the part of Harvey when she was put on paid administrative leave. To the contrary, the only "investigation" undertaken by defendants was

10

initiated by Hardy when she complained about the conduct of Cabrera, Wallace, and Wailoo *before* Wallace put her on paid administrative leave. The facts alleged in the Amended Complaint provide the "more" required by the *Jones* Court and other courts in order to conclude that placing an employee on paid administrative leave can constitute an adverse employment action. *See, id.*; *see also Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) ("[A]dministrative leave with pay during the pendency of an investigation does not, *without more*, constitute an adverse employment action." (emphasis supplied)). Moreover, as acknowledged by the *Jones* Court, at least one other Circuit Court has held that under some circumstances, placement on administrative leave can constitute an adverse employment action. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1078-79 (9th Cir. 2023). There the Ninth Circuit recognized that the general stigma resulting from placement on administrative leave, among other factors, may constitute an adverse employment action. *Id.* Thus, the Court should reject defendants' contention, as a matter of fact or law, that placing Hardy on paid administrative leave did not constitute an adverse employment action.

Second, defendants contend, as a matter of fact, that Hardy voluntary resigned. Relatedly, they contend that Hardy has abandoned her constructive discharge theory. Neither contention is accurate. With respect to defendants' first contention, the allegations of paragraphs 58-61 of the Amended Complaint, and all reasonable inferences arising from them, indicate that Hardy did not voluntarily resign, but rather was terminated. In any event, the determination of whether her separation from employment was voluntary or involuntary is a question of fact that cannot be resolved in the context of a motion to dismiss. Discovery is necessary on the issue.

With respect to defendants' second contention, Harvey has not abandoned her constructive discharge theory in the Amended Complaint. The allegations of the initial

11

Complaint referenced by defendants were changed subsequent to the filing of the initial Complaint to reflect the fact that Penn formally terminated Hardy on March 4, 2026. However, the allegations of paragraphs 58-61 of the Amended Complaint continue to support a constructive discharge theory. In fact, those allegations support the conclusion that Penn constructively discharged Hardy on January 28, 2026, and for reasons that likely will become clear during discovery, waited until March 4, 2026 to formally terminate her employment. More importantly, as defendants tacitly have acknowledged by citing *Gilbert v. Philadelphia Media Holdings, LLC*, 564 F. Supp. 2d 429, 440 (E.D. Pa. 2008) and *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169-70 (3d Cir. 2013), the factors that inform the decision whether an employee voluntarily resigned or was constructively discharged overlap in many circumstances. Hardy contends that the allegations of paragraphs 53-61 of the Amended Complaint, and the reasonable inferences that arise from them, at the very least indicate that she did not voluntarily resign her employment.

Third, the allegations of the Amended Complaint indicate that 1) being placed on administrative leave on October 13, 2025, 2) her constructive discharge in January 2026, and 3) her formal termination on March 4, 2026, each of which is an adverse employment actions, all were causally related to her invocation of her FMLA rights, specifically, her right to not have defendants interfere with her exercise of her FMLA rights and her right not to suffer retaliation because of her invocation of her FMLA rights. Hardy was placed on administrative leave on October 13, after informing Wallace and Cabrera on October 8 that she intended to file a formal complaint against them, after receiving an email from Cabrera on October 11 acknowledging that defendants had interfered with her FMLA rights because she had threatened to file a complaint against her and Wallace (*see* Am. Cmplt. ¶ 49), and after filing a complaint against Wallace,

Cabrera, and Wailoo earlier in the morning on October 13. Hardy's constructive discharge in January 2026 occurred one month after her complaint against Wallace, Cabrera, and Wailoo related to the exercise of her FMLA rights was found not to be unsubstantiated. Hardy's formal termination on March 4, 2026 occurred about one month thereafter.

The facts alleged in the Amended Complaint and the reasonable inferences arising from them provide the necessary causal connection between protected activity undertaken by Hardy with respect to the exercise of her FMLA rights and each of the three adverse employment actions described above. Accordingly, the Court should deny Defendants' Motion to Dismiss Hardy's FMLA retaliation claim.

## D.    The Disability Discrimination and Retaliation Standards.

A discrimination claim under the ADA is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that: (1) she had a "disability" within the meaning of the ADA; (2) she was qualified to perform the essential functions of her job; (3) she suffered an adverse employment action; and (4) the adverse employment action was motivated by her disability. *See* Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010). If the plaintiff successfully establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglass*, 411 U.S. at 802. If the employer meets this light burden, the burden shifts back to the plaintiff to prove that the reasons proffered by the employer were a pretext for discrimination and not the true motivation for the adverse employment action. *Id.*

To establish a prima facie case of retaliation under the ADA, a plaintiff must plead: 1) protected employee activity, 2) adverse employment action by the employer either after or

13

contemporaneous with the protected activity, and 3) a causal connection between the employee's protected activity and the employer's adverse action. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

### 1.    Hardy has stated claims of disability discrimination and retaliation.

The allegations of paragraphs 16-17, 26-27, 31-34, and 37-62 of the Amended Complaint and the reasonable inferences that arise from them sufficiently allege a claim of discrimination under the ADA.  Contrary to defendants' contention, Exhibit M to the Amended Complaint states the limitations on Hardy arising from her diagnosis.  Moreover, the inferences from the allegations referenced above indicated that the simple accommodation of allowing Hardy to work from home would have enabled her to perform the essential functions of her job without exacerbating the negative physical and mental impacts the of her health condition.

The allegations of the Amended Complaint also indicate that Hardy has sufficiently alleged a failure to accommodate theory.  Defendants knew of her disability, she requested the accommodation of sick days to manage her health condition, and although defendants reasonably could have accommodated Hardy's condition by allowing her to work from home, they made no good faith effort to assist Hardy by not requiring her to return to a work environment that would exacerbate her stress.  Instead, Wallace attempted to force Hardy to return to in-office work, knowing clearly that doing so would place her physical and mental well-being in jeopardy.  (*See* Am. Cmplt. ¶¶ 59-60).

For the same reasons stated above with respect to her FMLA retaliation claim, the allegations of the Amended Complaint and the reasonable inferences that arise from them sufficiently allege an ADA retaliation claim.  Hardy engaged in protected activity, defendants took adverse employment actions against her either after or contemporaneous with her protected

activity, and there is a causal connection between her protected activity and the adverse employment actions.

Accordingly, the Court should deny Defendants' Motion to Dismiss Hardy's ADA discrimination and retaliation claims.

### E.    Hardy has Sufficiently Alleged an IIED Claim.

Hardy acknowledges that the bar to show IIED is high, and that the *sine qua non* of such a claim is extreme and outrageous conduct.  Nevertheless, Hardy contends that the allegations of the Amended Complaint and the reasonable inferences that arise from them make out extreme and outrageous conduct on the part of the defendants sufficient to state an IIED claim.  More to the point, Hardy contends that in the absence of a complete factual record relating to the conduct of the defendants, it is not possible to determine at this stage of this litigation whether she would be able to prevail on her IIED claim.  Discovery is necessary to flesh out the allegations of the Amended Complaint.

Accordingly, the Court should deny Defendants' Motion to Dismiss Hardy's IIED claim.

### F.    Hardy's Claims Against the Individual Defendants are Valid.

"An individual supervisor working for an employer may be liable as an employer under the FMLA." *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 415 (3d Cir. 2012).  An individual is subject to FMLA liability when they exercise "supervisory authority over the complaining employee and were responsible in whole or part for the alleged violation" while acting in the employer's interest. *Id.* at 417.  Clearly, therefore, whether an individual defendant is subject to FMLA liability is a question of fact.  In this case, Hardy contends that the allegations of the Amended Complaint and the reasonable inferences that arise from them establish beyond doubt that defendants Lee and Wallace exercised supervisory authority over her

15

and were responsible in whole or in part for the alleged FMLA violations. Hardy contends that the allegations of the Amended Complaint and the reasonable inferences that arise therefrom establish that although it is beyond doubt that defendants Wailoo, Cabrera, Semmler, and Droesser were responsible in whole or in part for the alleged FMLA violations, the determination whether they exercised supervisory authority over Hardy and whether defendant Verrier satisfied either of the two requirements for individual FMLA liability can only be made after related discovery is taken.

Accordingly, Hardy requests that the Court deny Defendants' Motion to Dismiss Hardy's claims against defendants Lee and Wallace and defer a decision on Defendants' Motion to Dismiss Hardy's claims against defendants Cabrera, Wailoo, Semmler, Droesser, and Verrier pending related discovery.

## G.    The Court Should Grant Hardy Leave to File an Amended Pleading.

To the extent the Court believes after reviewing this Memorandum that Hardy has discussed relevant facts supporting her claims that are not alleged in the Amended Complaint, Hardy requests that the Court grant her leave to submit within a reasonable time an amended pleading addressing those matters.

## III.    Conclusion

For the reasons set forth above, Plaintiff, Cheryl D. Hardy, respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

_s/Robert T Vance Jr_
Robert T Vance Jr
Law Offices of Robert T Vance Jr
123 South Broad Street, 15th Floor
Philadelphia PA 19109
267 887 0172 tel / 215 501 5380 fax
rvance@vancelf.com

_Attorney for Cheryl D. Hardy_

17

# Exhibit A



October 14, 2025

Cheryl Hardy
7413 Cornerstone Drive
Newtown Square,   19073-4557

**RE:  FMLA Leave of Absence Approval**

Dear Cheryl:

Your FMLA leave of absence has been approved for the following period:

| Reason for Leave | Start Date | End Date |
|---|---|---|
| Serious Health Condition - Self | 10/09/2025 | 10/14/2025 |

**FMLA does not guarantee paid leave.** If your leave is for your own serious health condition, you will receive an additional notice detailing your short-term disability (STD) benefits. If your leave is for Pregnancy, you are required to send a delivery note to our office after the birth of your child. **Your short-term disability (STD) will not be paid until we receive this documentation.** Please note, the dates of your leave approvals may change depending on your actual delivery date.

In addition, if your leave is for "Care of a Family Member," it is your responsibility to enter sick leave and/or PTO to remain paid. Employees may use up to 5 sick days for the care of a family member.

If anything changes in your status or the dates associated with your FMLA leave of absence, you are required to notify us as soon as possible. This includes any early return to work dates or extension requests that differ from the original approval.

Staff Covered by a Collective Bargaining Agreement must refer to the appropriate article in their contract.

Should you have questions regarding this notice or your FMLA, please send an email to fmla@hr.upenn.edu.

Sincerely,

Dawn Lewis
Sr. Benefits Specialist

Kathleen McMullen, SHRM-CP
Sr. Benefits Specialist

# Exhibit B

age Absence - Workday    ×    +

https://www.myworkday.com/upenn/d/inst/13102!CK5mGhIKBggDEMenAhIICgYI1A0Q-AU~*0RxeLdHQtV0~/cacheab

t favorites    🔵 Microsoft Office Ho...    📎 SharePoint    ☁ OneDrive    G Gmail    🌐 https://www.epicuri...    🔷 General (VPUL-SMP

| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|
| | ⊘ PTO | | | ⊘ Employees Own Serious ...  ⊘ Sick Leave | | |
| | ▼ | | ▼ | ▼ | | Today |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| | ⊘ Employees Own Serious Health Condition   ⊘ Sick Leave | | | | | |
| | ▼ | ▼ | ▼ | ▼ | ▼ | |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| | ⊘ Employees Own Serious Health Condition | | | | | |
| | ▼ | ▼ | ▼ | ▼ | ▼ | |
| 26 | 27 | 28 | 29 | 30 | 31 | Nov 1 |
| | ⊘ Employees Own Serious Health Condition | | | | | |
| | ▼ | ▼ | ▼ | ▼ | ▼ | |

1 Day - Request Absence

🔍 Search

# Exhibit C



October 14, 2025

Cheryl Hardy
7413 Cornerstone Drive
Newtown Square,   19073-4557

RE:  Intermittent Leave of Absence

Dear Cheryl:

This is to notify you that the University of Pennsylvania has reviewed and approved the required Medical Certification for your requested leave of absence as defined below:

| | |
|---|---|
| Reason | Serious Health Condition |
| Relationship: | Self |
| Certified Leave Period: | 10/15/2025 through 04/14/2026 |
| Frequency of Leave: | up to one time per month |
| Duration of Leave: | up to three days per episode |

Timing of Leave
If you have some control over the timing of your leave, you are expected to make an effort to schedule appointments at times that will cause the least disruption to the functionality of your department. You are expected to provide your manager with as much notice as possible when you need to be away from work.

Workday
All intermittent time off must be entered through Workday under the "Time Off and Leave" option. Your time under FMLA will be tracked by the FMLA Administrators, and you will receive periodic notices of your remaining time.

**Please note: For last-minute requests, you are still expected to follow your department's procedures for 'calling out.' This may include notifying your direct supervisor.**

University employees covered by collective bargaining agreements should refer to the appropriate article in their contract.

Should you have any questions about this notice or your leave, please send an email to fmla@hr.upenn.edu.

Sincerely,

Dawn Lewis
Sr. Benefits Specialist

Kathleen McMullen, SHRM-CP
Sr. Benefis Specialist